OPINION OF THE COURT
Fuchsberg, J.
These three appeals, in separate but interrelated cases, require us to probe the scope of the jurisdiction conferred on our Surrogate’s Court. In particular, we are called upon to treat with article VI (§ 12, subd d) of our State Constitution and SCPA 201 (subds 1, 3) and SCPA 202. At issue too is the impact, if any, of RPAPL 701 on the power of the Surrogate’s Court to entertain a dispute over the possession of real estate.
The three cases arise out of the administration of a parcel of improved realty held by Jean M. Piccione and Bernard Grossman as executors of the estate of Nicholas Piccione. When the executors received the property it was burdened by a lease which the decedent in his lifetime had entered into with All Craft Metals, Inc. (ACM), which later had assigned the lease to Fire Burglary Instruments, Inc. (FBI), and its subsidiary, All Craft Finishing, Inc. (ACF).
Shortly before the lease by its terms was to expire, the executors, to facilitate the winding up of the estate, entered into what they regarded as an advantageous contract for the sale of the property to a third party. The sale, conditioned on the awaited vacating of the premises, was set for a date subsequent to the one on which the lease was *284 to terminate. However, though the executors wrote the tenants to remind them that they would be expected to leave at the expiration date, when the time to do so arrived, the tenants found it more convenient not to do so. After many weeks of unsuccessful efforts to get their tenants to depart, the executors brought a summary proceeding in the District Court of Nassau County to recover possession. The petition was dismissed when the court held that the letter in which they attempted to notify the tenants of their intention to terminate the lease was technically deficient (Real Property Law, § 232-b).
At this juncture, the executors, apprehensive over a matured mortgage on the premises and the imminent exercise of the purchaser’s right to cancel, brought on a proceeding in Surrogate’s Court, Nassau County, to direct FBI and ACI to “vacate and surrender the premises”. The main thrust of the tenants’ opposition, premised on the fact that the Surrogate’s Court is not one of the courts mentioned in RPAPL 701 (subd l)[1] was that the court was without subject matter jurisdiction. But the Surrogate, of the view that the proceeding “relate[d] to the affairs of a decedent”, concluded that the breadth of the constitutional delineation of his court’s jurisdiction rendered its nonlisting in section 701 a matter of “no consequence”. Reaching the merits, he ordered the tenants to vacate the premises (106 Misc 2d 898, 902). For its part, the Appellate Division joined in the Surrogate’s rejection of the tenants’ section 701 argument, but, citing to Matter of Lainez (79 AD2d 78, 80, affd 55 NY2d 657), ruled the proceeding an “independent controversy * * * outside of the subject matter jurisdiction of the Surrogate’s Court”. Accordingly, it reversed on the law and dismissed the proceeding (85 AD2d 604, 605). The executors now appeal.
Soon after they repossessed the property, the executors commenced a second Surrogate’s Court proceeding against FBI, ACF “and/or Data Control Systems, Inc” (Data), the last a guarantor of ACM’s obligations under the lease. Entitled “petition to recover .assets of the estate”, and treated by the Surrogate as a discovery proceeding brought *285 under SCPA 2103, its prayer demanded damages because the executors (1) had been “forced to renegotiate the mortgage at a higher interest rate in order to prevent foreclosure”, (2) during the holdover period advanced real estate and school taxes payable by ACF under the lease, (3) incurred expenses to repair damage to the premises and replace fixtures and equipment, each the responsibility of the tenants, and (4) incurred consequent legal fees and court costs.
In their answer, FBI and ACF, aside from denying the executor’s material allegations, again challenged subject matter jurisdiction. Data, arguing that its guarantee was not in effect after the expiration of the original lease, moved to dismiss. ACM, who had not been joined as a party, moved to intervene in order to move for summary judgment on a proposed counterclaim and cross claim for return of the security deposited when it executed the original lease, entitlement to which ACF was laying claim. Except to grant ACM’s motion, the applications were denied.
In the same decision, the Surrogate’s Court rejected FBI and ACF’s jurisdictional attack. Relying in the main on a 1966 report of the Temporary State Commission on Modernization, Revision and Simplification of Law of Estates,[2] the Surrogate ruled that constitutional and legislative expansion of Surrogate’s Court jurisdiction since 1962 sanctioned a Surrogate’s Court proceeding for “damages arising out of a contract to lease real property, which later becomes an asset of the decedent’s estate” (108 Misc 2d 255, 258). With this the Appellate Division took issue. Opining that section 2103’s reference to “money or other personal property or the proceeds or value thereof” now embraces such property as “a fund of indeterminate amount (see, e.g., Matter of Young, 80 Misc 2d 937), a determinate amount of money transferred by a decedent as the result of fraud or undue influence (see Matter of Reiner, 86 Misc 2d 511) and rents and profits already collected where * * * ownership of the demised premises [is contested] (see Matter of Hall, 54 Misc 2d 923)” is within the reach of such a discovery proceeding, it thought the line *286 should be drawn at “contingent, unliquidated damages resulting from tortious acts or breaches of contract”. Finding that the executors’ claim fell within the latter class, and citing again to Matter of Lainez (supra), it reversed on the law and dismissed in this case too (85 AD2d, supra, at pp 605, 606). From the order entered on this decision, the executors take their second appeal.
The third case in this trilogy finds the litigants exchanging roles. This time the tenants, FBI and ACF, were the suitors and the executors defendants. Alleging that the prosecution of the eviction proceeding was malicious and an abuse of process, the plaintiffs lodged their action in Supreme Court. On motion of the executors, that court removed the action to the Surrogate’s Court. In so ordering, the Supreme Court stated that, while “[a] suit for malicious prosecution or other tortious act of an executor is against the executor in his individual rather than representative capacity” and that “a substantial relationship between this matter and the affairs of a decedent” in the end might not be found, it was not prepared to say that the conduct on which the complaint was based was not in furtherance of the administration of the decedent’s estate. But the Appellate Division, still citing to Matter of Lainez (supra), reversed, this time because “[t]his action is an independent matter involving living persons” (Fire Burglary Instruments v Piccione, 85 AD2d 594). The executors now appeal to this court by leave of the Appellate Division, which certified the following question “Was the order of this court dated December 7, 1981, properly made?”
This as background, we first observe that at this stage we cannot reach the merits of the second appeal, i.e., the one from the order dismissing the discovery proceeding. ACM’s counterclaim and cross claim, which are still pending, relate to the transaction encompassed by the order dismissing the petition. In consequence, the appeal is from an order which does not determine the proceeding within the meaning of the State Constitution (see NY Const, art VI, § 3). It follows that this appeal must be dismissed. (See Lizza Inds. v. Long Is. Light. Co., 36 NY2d 754; Walker v Sears, Roebuck & Co., 36 NY2d 695; Behren v Papworth, 30 NY2d 532; Cohen and Karger, Powers of *287 the New York Court of Appeals [rev ed], pp 81, 84-93; cf. Ratka v St. Francis Hosp., 44 NY2d 604, 609.)
Concentrating then on the other two appeals, it is self-evident that their determination requires definition of the subject matter jurisdiction of the Surrogate’s Court. Since September 1, 1962, this is grounded on article VI (§ 12, subd d) of our State Constitution, which provides: “The surrogate’s court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents * * * administration of estates and actions and proceedings arising thereunder * * * and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.”
Broad as this mandate is on its very face, to appreciate its full extent its antecedents and sequellae must be examined. When they are, it becomes apparent that the history of the Surrogate’s Court during the twentieth century is one of steadily expanding jurisdiction (see, generally, 1 Warren’s Heaton, Surrogates’ Courts [6th ed], § 2, par 2, p 1-13). In essence, for a long time, its sole source of power was legislative. For the words by which the court’s existence was enshrined in the Constitution of 1894 and so continued without change until 1962[3] — “surrogates’ courts shall have the jurisdiction, legal and equitable, and powers now established by law until otherwise provided by the legislature” — left it completely at the mercy of statutory enactment.
In actual practice, however, the legislative course was to repeatedly enlarge the Surrogate’s power (see, e.g., L 1934, ch 352, granting the Surrogate’s Court discretion to transfer actions to the Supreme Court for trial; L 1934, ch 539, adding Surrogate’s Court Act, § 206-a, which greatly enlarged their former power to entertain discovery proceedings and direct payment of proceedings thereof; L 1937, ch 687, granting power over accounting of common trust funds). Of special significance for the point we make was section 40 of the former Surrogate’s Court Act, which *288 conferred wide powers over claims that were merely incidental to those which the statutes had expressly committed to the court.
It was with section 40 before him that Chief Judge Cardozo, writing for a unanimous Bench, was prompted to indorse literal construction of the powers of the Surrogate’s Court because “ ‘[concentration of jurisdiction as to decedents’ estates’ * * * is the purpose clearly revealed in the statutory scheme” (Matter of Raymond v Estate of Davis, 248 NY 67, 72, quoting from Matter of Haigh, 125 Misc 365, 368). This makes it more than noteworthy that section 40 endowed Surrogates with-authority “to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or * * * to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires”. Moreover, the 1962 constitutional amendment was preceded by a report of the Tweed Commission urging the Legislature to minimize unnecessary shuttling from one court to another (McKinney’s Session Laws of NY, 1956, Temporary Commission on the Courts, 1956 Report, p 1405).
All this culminated in the 1962 amendment, the obvious effect of which, among other things, was to secure the advances in Surrogate’s Court jurisdiction over matters “relating to” the affairs of decedents against the possibility of legislative withdrawal. Absent the need for specific statutory authorization for a particular proceeding, the emphasis now shifted so that, “ ‘for the Surrogate’s Court to decline jurisdiction, it should be abundantly clear that the matter in controversy in no way affects the affairs of a decedent or the administration of his estate’ ” (Matter of Young, 80 Misc 2d 937, 939 [Midonick, S.]).
Nevertheless it is suggested that the final clause of article VI (§ 12, subd d) — “as may be provided by law” — be read to modify subdivision d in its entirety. If such a construction were correct, there would have been no reason for the framers of the amendment to specify two types of actions and proceedings, i.e., “those relating to the affairs of decedents” and those “arising thereunder or pertaining” to the “administration of estates”, as being within the *289 jurisdiction of the Surrogate’s Court, in addition to “such other actions and proceedings ** * * as may be provided by law”. Indeed, there would have been no necessity to amend the Constitution at all. In short, the Constitution itself conferred absolute and unconditional jurisdiction over specified subject matter and also authorized the Legislature to confer additional authority by statute. This, as we know, the Surrogate’s Court Procedure Act later did by enacting SCPA 201 (subds 1, 3) and SCPA 202.[4] Professor Siegel, in his Practice Commentary on SCPA 201 (subd 1) tells us, “In its listing of the specific categories of subject matter jurisdiction, section 12(d) appears to be self-executing; that is, it confers the listed items of jurisdiction itself and contemplates that no statute would be needed to aid it” (Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 201, at p 43).
Nor properly read, is our decision in Matter of Lainez (55 NY2d 657, supra), to the contrary. The issue presented by Lainez was a limited one, i.e., whether the Surrogate’s Court had jurisdiction over a dispute between a distributee of the decedent and a creditor of the distributee when resolution of the controversy would have no effect upon the estate itself. In reversing the order of the Surrogate’s Court, the Appellate Division expressly limited its opinion to the facts of the case before it, and then merely held that no jurisdiction existed because “the power of the Surrogate’s Court relates to matters affecting estates of decedents and not to independent matters involving controver *290 sies between living persons” (79 AD2d, at p 80). Because of the express limitations in the opinion, it is clear that Lainez stands only for the proposition, already well established by prior case law, that “the Surrogate’s Court has no jurisdiction over a claim by a creditor against a distributee or legatee of an estate * * * absent a showing that the distributee assigned his share to the creditor” (79 AD2d, at pp 80-81; accord Matter of Jemzura, 65 AD2d 656, affd 52 NY2d 1067).
Applying these principles to the eviction matter, it would seem to follow that such a proceeding, brought by the executors in the process of attempting to wind up the administration of the estate, is cognizable in the Surrogate’s Court. It is undisputed that the tenants were to be evicted so that the premises could be sold. It is further not denied that the proceeds of the sale were to go to the estate and no doubt it will be the Surrogate’s Court which will ultimately decide how these will be distributed. Thus, it can hardly be said that this controversy “in no way affects the affairs of the decedent or the administration of the estate”.
Despite all of this, it nevertheless is contended that RPAPL 701 operates to divest the Surrogate’s Court of jurisdiction. True it is that the Surrogate’s Court is not a forum denominated in the statute. But it is clear from the legislative history that the courts which were identified were not intended to enjoy exclusive jurisdiction (Fourth Preliminary Report of Advisory Committee on Practice and Procedure, NY Legis Doc, 1960, No. 20, p 541). As with the Supreme Court, which, though also unlisted, may nonetheless look to the Constitution as an independent source of authority, so may the Surrogate’s Court, procedurally unlimited as it is in its constitutional authority in matters “relating to the affairs of decedents”. And, since the main reasons for listing courts in RPAPL 701 was to encourage the bringing of such actions in lower courts (see, e.g., Matter of 3505 Realty Corp. v Weinberger, 41 Misc 2d 254), it would be counterproductive to interpret it as to intend the fragmentation of the treatment of the affairs of *291 a decedent’s estate (cf. Lun Far Co. v Aylesbury Assoc., 40 AD2d 794). Fundamentally, of course, statutes are not to be interpreted to curtail constitutionally based jurisdiction (People ex rel. Mayor of City of N. Y. v Nichols, 79 NY 582, 590).
Now reaching the action for malicious prosecution and abuse of process, each a tort involving the commission of an act which is motivated by an improper purpose (see Board of Educ. v Farmingdale Classroom Teachers Assn., 38 NY2d 397, 400; Prosser, Torts [4th ed], §§ 119,121), it is a long-established general principle that an executor who has committed such an act, even in the course of the administration of the estate, is liable therefor in an individual rather than representative capacity (see Kirchner v Muller, 280 NY 23; see, generally, Estate’s Liability for Tort of Executor, Ann., 82 ALR3d 892, 950-952). Therefore, unlike the eviction proceeding, at least in the present context, it cannot be said to relate to either the affairs of the decedent or the administration of his estate.
For all these reasons, in Matter of Piccione (All Craft Finishing, Inc., and Fire Burglary Instruments, Inc., respondents), the order of the Appellate Division should be reversed and the order of the Surrogate’s Court, Nassau County, reinstated; in Matter of Piccione (All Craft Finishing, Inc., and Fire Burglary Instruments, Inc., respondents; All Craft Metals Co., Inc., and Data Control Systems, Inc., appellants), the appeal should be dismissed and, in Fire Burglary Instruments v Piccione, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
In Matter of Piccione in the first above-entitled matter: Order reversed, with costs, and the order of Surrogate’s Court, Nassau County, reinstated.
In Matter of Piccione in the second above-entitled matter: Appeal dismissed, without costs, upon the ground that the order appealed from does not finally determine the proceeding within the meaning of the Constitution.
*292 In Fire Burglary Instruments v Piccione: Order affirmed, with costs. Question certified answered in the affirmative.

. RPAPL 701 (subd 1) provides: “A special proceeding to recover real property may be maintained in a county court, the court of a police justice of the village, a justice court, a court of civil jurisdiction in a city, or a district court”.

. (Legis Doc, 1966, No. 19, Report 4.41A Appendix [M-1J.)

. (NY Const of 1894, art VI, § 15 [renum as art VI, § 13, in 1925, and continued without change in NY Const of 1938 until repealed by art VI of the Constitution, eff as of Sept. 1, 1962].)

. SCPA 201 (subd 1) provides: “The court has, is granted and shall continue to be vested with all the jurisdiction conferred upon it by the Constitution of the State of New York, and all other authority and jurisdiction now or hereafter conferred upon the court by any general or special statute or provision of law, including this act”.
Subdivision 3 provides in pertinent part: “The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents * * * to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter”.
SCPA 202 provides: “The proceedings enumerated in this act shall not be deemed exclusive and the court is empowered in any proceeding, whether or not specifically provided for, to exercise any of the jurisdiction granted to it by this act or other provisions of law, notwithstanding that the jurisdiction sought to be exercised in the proceeding is or may be exercised in or incidental to a different proceeding”.