■ SHELDON H. SOLOW, Appellant, v MANHATTAN SCHOOL OF MUSIC et al., Respondents. — In an action, *inter alia,* for a declaration that plaintiff's property is entitled to certain easements, plaintiff appeals from an order of the Supreme Court, Suffolk County (Gowan, J.), dated September 2, 1983, which granted defendants' Manhattan School of Music, Irving Liebman and Episcopal Actors' Guild, motions to dismiss his amended verified complaint on the ground of collateral estoppel, and denied plaintiff's motion, *inter alia,* for a preliminary injunction.

Order affirmed, with one bill of costs.

The facts of the instant case reveal that Dorothy Quick Mayer was the owner of certain real property located in East Hampton, New York, part of which fronted on the ocean. The property known as "Mostly Dune" was improved by a residential dwelling. Mrs. Mayer died on March 15, 1962, and by the terms of her will, admitted to probate on May 31, 1962, she devised and bequested the "Mostly Dune" property to the defendant Manhattan School of Music (Manhattan). The disposition to Manhattan of the "Mostly Dune" property was contained in paragraph "FOURTH" of her will, which provided in pertinent part:

"FOURTH: I give, devise and bequeath to the Manhattan School of Music my East Hampton, Long Island property and real estate, together with the 'Mostly Dune' station wagon, and its furniture, its linens, its books and such contents as are ordinarily part of such household, but not including my personal things

which may be located there by reason of my residence in East Hampton, Long Island at the time of my decease, to be used as a home for students and teachers of said school, under the name, 'MOSTLY DUNE', and sub-titled, 'GERTRUDE MUMFORD-DOROTHY QUICK MEMORIAL' * * *

"I further direct that the above property, including the contents thereof so given, devised and bequeathed, be kept as nearly intact and in its state at the time of my decease as may be practicable, consistent with the purpose of this gift.

"However, if the emergency should arise and additional monies are needed to maintain, as directed, the above property, including the contents thereof, then and in such event, the Manhattan School of Music may sell all or any part of the lot (now unfenced and unimproved) which adjoins said residence.

"I further give and bequeath to said Manhattan School of Music the sum of One Hundred Thousand ($100,000.00) Dollars, to be known as the 'GERTRUDE MUMFORD ENDOWMENT FUND', upon condition that said sum be invested and the income thereof applied exclusively toward the payment of taxes and the maintenance and upkeep of the above mentioned property for the purposes herein specified".

In 1962, Manhattan accepted the property subject to the conditions set forth in the will, including (1) that Manhattan use the property as a home for students and teachers, and (2) that the property be maintained "as nearly intact and in its state at the time of [Mrs. Mayer's death] as may be practicable", and Mrs. Mayer's executors conveyed the property to Manhattan by deeds which made reference to Manhattan's acceptance of "Mostly Dune" on the specific conditions set forth in the will.

Pursuant to the authorization contained in paragraph "FOURTH" of the will, Manhattan sold a portion of the "Mostly Dune" "unfenced and unimproved" lot in 1963 to a contiguous landowner Rosemary Ward Tyson, to gain added funds for the maintenance of "Mostly Dune". Manhattan sold the remainder of that "unfenced and unimproved" lot in the fall of 1968 to plaintiff Solow and his sister, Rosalie G. Wolff, pursuant to the same authorization. Mrs. Wolff subsequently assigned her contract of sale to plaintiff. The sales contracts between Manhattan and plaintiff, and Manhattan and Wolff, both dated October 8, 1968, contained the following provision: "7. *Seller [the School] is not liable or bound by any warranties, guaranties, statements or representations* made by any broker, agent, employee or other person representing or purporting to represent the Seller, *unless herein expressly set forth.* It is understood and agreed that *all understandings and agreements heretofor had between the parties hereto are merged in this contract,* which alone fully and

completely expresses their contract, and that the same is entered into after full investigation, *neither party relying upon any statement or representation not embodied in this contract* made by the other. This contract may not be changed or terminated orally" (emphasis added).

The contracts similarly provided: "6 * * * Seller has not made and does not make any representations as to anything affecting or relating to the aforesaid premises except as herein specifically set forth and *Purchaser hereby expressly acknowledges that no such representations have been made*" (emphasis added).

By verified petition dated March 16, 1981, Manhattan commenced a cy pres proceeding before the Surrogate's Court, New York County, for an order authorizing the sale of "Mostly Dune" and use of the proceeds for construction of a dormitory. Manhattan alleged that the maintenance funds contained in the endowment fund created by Mrs. Mayer's will and the income therefrom were insufficient to permit proper upkeep of "Mostly Dune" and that "changed circumstances" justified the court in relieving the school from the obligations it had assumed on accepting Mrs. Mayer's devise and bequest. Cited as parties to the cy pres proceeding were the Ladies' Christian Union (Union) and the Episcopal Actors' Guild of America, Inc. (Guild), alternative beneficiaries to whom Mrs. Mayer's will had directed a conveyance of "Mostly Dune" in the event that Manhattan had refused to accept the conditions of the bequest.

Also cited, in addition to the Attorney-General, were the surviving executors of Mrs. Mayer's estate, who had been directed by the will to convey the property to still another charitable institution in the event that none of the three named beneficiaries was willing to accept Mrs. Mayer's conditions.

On or about May 28, 1981, plaintiff moved to intervene in the cy pres proceeding, asserting that he was entitled to intervene as of right, by permission, or, in the alternative, as *amicus curiae.* Numerous affidavits tendered in support of the motion to intervene challenged the merits of Manhattan's cy pres application; to wit, they stressed the need for an accounting from Manhattan and challenged the claimed inadequacy of existing maintenance funds. In support of the intervention application, plaintiff averred that he and Mrs. Mayer had "virtually identical interests" in preserving "Mostly Dune", that in purchasing his property, he relied on the conditions set forth in Mrs. Mayer's will concerning "Mostly Dune", and that "[t]o allow the School to sell the Mostly Dune residence under the terms which it suggests will totally defeat Mrs. Mayer's express plan for the preservation of her property and, likewise, will irreparably

harm my neighboring property by allowing drastic changes in the house's physical status and use". He also asserted that in buying his lot from Manhattan and in constructing his home thereon he relied on the terms of the will and representations by Manhattan which led him to believe that it would continue to use and maintain "Mostly Dune" unchanged as a home for students and teachers.

Both Manhattan and the Attorney-General opposed the plaintiff's motion to intervene. Manhattan "urge[d] the Court not to get side-tracked by any attempts to delay which would-be intervenors or others may engage", and requested that a method of ensuring a fair and open sale of "Mostly Dune" be approved expeditiously. The Attorney-General asserted that only he was a necessary party to the cy pres application and that "[h]is independence negates the need for a third party intervenor". The Attorney-General also asserted that it was "unmistakable that the reason [plaintiff] seeks to intervene is to protect his view, which will be preserved if 'Mostly Dune' remains where it is", and that plaintiff wanted to maintain the distance between his residence and "Mostly Dune". He concluded that such "selfish interest" did not support intervention.

By written decision dated July 24, 1981, Surrogate Lambert denied plaintiff's motion to intervene, or in the alternative, to appear as *amicus curiae* (*Matter of Mayer*, 110 Misc 2d 346). Before any order on the above decision was entered, plaintiff moved for reargument. On December 30, 1981, the Surrogate issued an order denying the motion to intervene or appear as *amicus curiae*. Surrogate Lambert also denied the motion for reargument and granted the cy pres petition (*Matter of Mayer*, NYLJ, Jan. 6, 1982, p 10, col 6).

Plaintiff appealed to the Appellate Division, First Department, from the Surrogate's order denying his motion to intervene or appear as *amicus curiae*. He reiterated his "reliance" claims in his briefs to the Appellate Division, First Department, arguing that he relied upon the terms of Mrs. Mayer's will and representations by Manhattan that "Mostly Dune" was to be preserved and maintained. He further argued that the facts set forth in his application to intervene indicated the "existence of a negative easement", a "covenant running with the land" or an "estoppel" that entitled him, in effect, to enforce the terms of Mrs. Mayer's will. Manhattan, on the other hand, argued that the Surrogate was correct in determining that plaintiff had no property interest in "Mostly Dune". It conceded, however, that if the Surrogate's "determination was incorrect and plaintiff could somehow establish that he has a cognizable property right in

'Mostly Dune', then he would be entitled to intervene to protect that right".

In an order dated February 10, 1983, the Appellate Division, First Department, unanimously affirmed the Surrogate's order denying Solow's motion to intervene or to appear as *amicus curiae* (*Matter of Mayer*, 92 AD2d 756).

While plaintiff's appeal to the First Department was pending, he commenced the present action on or about October 21, 1981 against Manhattan, the Union and the Guild for a judgment declaring that he is entitled to easements burdening the remainder of "Mostly Dune" and requiring that the remainder and house located thereon be maintained and preserved in its state at the time of Mrs. Mayer's death. Thereafter, Manhattan moved to dismiss the instant action on the grounds of *res judicata* or collateral estoppel. Alternatively, Manhattan sought a stay until the motion to intervene in the cy pres proceeding was finally determined. On June 30, 1982, Special Term (Gowan, J.) granted Manhattan's motion for a stay of further proceedings pending the outcome of plaintiff's appeal to the First Department, and denied Manhattan's motion to dismiss on *res judicata* or collateral estoppel grounds without prejudice to renewal after the First Department's decision.

On January 28, 1983, Special Term (Gowan, J.), vacated the stay of the instant action, to the extent that it granted a motion by plaintiff to serve a supplemental summons and amended complaint upon Irving Liebman, who had been approved by the Surrogate as contract vendee of "Mostly Dune". A supplemental summons and an amended complaint were thereafter served upon Liebman in or about February, 1983.

Plaintiff's amended verified complaint contained four causes of action and alleged the following: that Manhattan accepted "Mostly Dune" subject to the specific conditions set forth in Mrs. Mayer's will, to wit, that "Mostly Dune" would be preserved as nearly as practicable in its state at the time of Mrs. Mayer's death, and that the house and property would be maintained as a home for music students and teachers; that in 1968, Manhattan offered to sell a portion of the unfenced and unimproved part of "Mostly Dune", as authorized by Mrs. Mayer's will, to plaintiff, as a lot on which to build a home, and further that Manhattan's representatives told plaintiff that "Mostly Dune" would be preserved as nearly as practicable in its state at the time of Mrs. Mayer's death and would be maintained as a home for music students and teachers; that "[t]hese oral representations by defendant Manhattan were an inducement for plaintiff to purchase the offered property"; and that in reliance upon the oral

representations, and upon the terms and conditions of Mrs. Mayer's will, "plaintiff Solow purchased the offered property to the north of Mostly Dune".

The amended verified complaint further stated that plaintiff thereafter expended a considerable sum in constructing a home, positioning the residence to take the best possible advantage of the physical layout of "Mostly Dune" and the house thereon, "including an unobstructed ocean view over the remainder of Mostly Dune from the upper floor" of the plaintiff's residence. It was alleged that the representations made by Manhattan to plaintiff and the terms and conditions set forth in Mrs. Mayer's will restricting the use of "Mostly Dune" created affirmative and negative easements in favor of the property owned by plaintiff, and that Manhattan was equitably estopped to deny the existence of said easements.

It was further asserted that on or about September 30, 1982 (while plaintiff's appeal was pending in the First Department) Manhattan entered into a contract of sale and lease with Liebman ("Sale/Lease"), pursuant to which Liebman entered into sole possession of "Mostly Dune", and that Manhattan abandoned "Mostly Dune" as a home for music teachers and students. The amended verified complaint alleged that until closing of title, the "Sale/Lease" provided that Liebman had the sole right of possession of "Mostly Dune".

The amended verified complaint charged that Manhattan acted in violation of the representations made to plaintiff and the terms and conditions of Mrs. Mayer's will in the following respects: Manhattan failed to maintain the house located on "Mostly Dune" in its state at the time of Mrs. Mayer's death by neglecting the property and allowing it to fall into serious disrepair; Manhattan abandoned its duties and obligations for the continued use and maintenance of "Mostly Dune"; Manhattan entered into the "Sale/Lease" with Liebman without requiring that Liebman adhere to the afore-mentioned restrictions. The foregoing was claimed to constitute a violation of the easements appurtenant to plaintiff's property and to "threaten * * * drastic changes to the physical status and use of the remainder of Mostly Dune". Plaintiff claimed he would be harmed by any use of "Mostly Dune" which is not in strict compliance with the provisions of Mrs. Mayer's will.

The following relief was demanded: (1) that it be declared that there exists affirmative and negative easements requiring that the use of "Mostly Dune" be in accordance with the representations made to plaintiff and the terms and conditions of Mrs. Mayer's will; (2) that Manhattan be ordered to specifically

perform the duties and obligations imposed upon it by the terms and conditions of Mrs. Mayer's will; (3) that Liebman be ordered to specifically perform the duties and obligations imposed upon Manhattan by the terms and conditions of Mrs. Mayer's will; and (4) that it be declared that the rights of Liebman, if any, in "Mostly Dune" are subject to the provisions of paragraph "FOURTH" of Mrs. Mayer's will and to plaintiff's rights.

By notice of motions dated March 4, 1983 and March 11, 1983, Liebman and Manhattan, respectively, moved to dismiss the amended verified complaint, *inter alia,* on the grounds of *res judicata* and collateral estoppel.* Justice Gowan, *inter alia,* granted the motions by Manhattan and Liebman to dismiss the complaint on the ground of collateral estoppel.

Special Term properly determined that collateral estoppel was a bar to the maintenance of the present action. As the Court of Appeals noted in *Capital Tel. Co. v Pattersonville Tel. Co.* (56 NY2d 11, 17-18): "Required for application of the doctrine [of collateral estoppel] * * * are that the issue as to which preclusion is sought be identical with the issue decided in the prior proceeding, that the issue have been necessarily decided in the prior proceeding, and that the litigant who will be held precluded in the present proceeding have had a full and fair opportunity to litigate the issue in the prior proceeding (*Gilberg v Barbieri,* 53 NY2d 285, 291; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71; see *B. R. De Witt, Inc. v Hall,* 19 NY2d 141). The burden of establishing the first two elements rests upon the proponent of preclusion, but as to the lack of a full and fair opportunity to contest, the burden is on the opponent (*Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 73, *supra; B. R. De Witt, Inc. v Hall,* 19 NY2d 141, 148, *supra).*"

In the instant case, plaintiff requests a declaration that there exist affirmative and negative easements appurtenant to his property based upon specific conditions set forth in the will and upon representations made by representatives of Manhattan. The issue as to whether there exist such easements based upon the terms of the will and representations made by Manhattan is the identical issue raised by him in support of his motion to intervene in the cy pres proceeding, and that issue was actually decided upon by the Surrogate's Court and the First Department.

---

* The Guild joined in Manhattan's motion to dismiss and adopted the grounds advanced by Manhattan. Pursuant to a stipulation dated July 25, 1983, after the determination appealed from, Union was to be treated as a moving party and the complaint was to be deemed dismissed as to it.

Special Term also properly concluded: "[t]he denial of the application to intervene *must, of necessity,* have included a determination (1) that SOLOW did not possess a dominant estate requiring the remainder of 'Mostly Dune' and the house located thereon be maintained and preserved in its state at the time of Mrs. Mayer's death; and (2) that there did not exist a negative easements appurtenant burdening said remainder" (emphasis supplied).

If plaintiff had a property interest in "Mostly Dune" he would have had a right to intervene in the cy pres proceeding, the denial of which would have rendered the Surrogate incapable of rendering final and preclusive cy pres relief (see CPLR 1012, subd [a], pars 2, 3; *Matter of Cavages, Inc. v Ketter,* 56 AD2d 730; *Matter of Village of Spring Val. v Village of Spring Val. Housing Auth.,* 33 AD2d 1037; *Levine v Town of Oyster Bay,* 40 Misc 2d 605). Moreover, contrary to plaintiff's claim, the Surrogate's Court did have jurisdiction to consider his claim to a property right (see NY Const, art VI, § 12, subd d; *Matter of Piccione,* 57 NY2d 278; *Matter of Crichton,* 20 NY2d 124; cf. *Matter of Lainez,* 79 AD2d 78, affd 55 NY2d 657). We also note that plaintiff had ample opportunity to litigate his property claims, both in the Surrogate's Court and on appeal to the First Department.

In any event, plaintiff has failed to prove reasonable reliance as a matter of law. It was apparent that a day might come when Manhattan would no longer own the property, and even if plaintiff was entitled to rely on the provisions of the will, the will indicated that the restrictions were to be followed only insofar "as may be practicable, consistent with the purpose of this gift". Boyers, J. P., Rubin, Lawrence and Eiber, JJ., concur.