[714 NYS2d 497]

In the Matter of the Estate of RAFFAELE LUPOLI, Also Known as RAPHAEL LUPOLI, Deceased. PETER LUPOLI, Appellant; MARGUERITE LUPOLI, Respondent.

Second Department, September 25, 2000

APPEARANCES OF COUNSEL

*Robert A. Ross,* Huntington, for appellant.
*Peter M. Redmond,* Bayside, for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

The essential question in this case is whether the Surrogate's Court has the power to punish a person for contempt of court based on that person's disobedience of an information subpoena. The information subpoena at issue consists of a series of questions addressed to a witness concerning that witness's knowledge of the assets held by a beneficiary and former de facto executor of the estate, against whom the Surrogate has entered a money judgment. Relying on certain statutes in SCPA article 6 and CPLR article 52, the Surrogate held that he did not have jurisdiction over the contempt application. We reverse on the authority of *Matter of Piccione* (57 NY2d 278), which establishes the general principle that a Surrogate may look directly to NY Constitution article VI as a source of jurisdiction.

This is an application by Peter Lupoli, the administrator c.t.a. of the estate of Raffaele Lupoli, also known as Raphael Lupoli, in which he requests "that Marguerite Lupoli be adjudged in contempt of [Surrogate's Court] for her willful disregard of the process of this Court, and the costs and expenses incurred as a result of her contempt for the prosecution of this proceeding and for such other and further relief as this Court deems just and proper."

The facts asserted in support of this petition are as follows: By decree dated January 27, 1999, the Surrogate's Court, Queens County, directed, *inter alia,* that Matthew Lupoli, a former de facto executor, pay to the estate the total sum of $1,714,322.17. On February 18, 1999, a transcript of a decree was docketed in the office of the County Clerk of Queens County. As will be noted below, the decree is now enforceable

by any of the enforcement methods set forth in the CPLR, as if the decree were a money judgment of the Supreme Court.

On February 5, 1999, counsel for the administrator of the estate issued a standard form "restraining notice to garnishee" to Marguerite Lupoli, the wife of the judgment debtor, Matthew Lupoli. It states, in effect, that Marguerite Lupoli either owes a debt to Matthew Lupoli, or that she is in possession of property in which he has an interest. The notice states that pursuant to CPLR 5222 (b), she is forbidden from making any transfers of such property, and she is warned that disobedience of the restraining notice could be punishable by contempt.

On February 5, 1999, counsel for the administrator of the estate also issued an information subpoena to Marguerite Lupoli pursuant to CPLR 5224 (a) (3). This document consists, essentially, of a series of questions relating to Marguerite Lupoli's knowledge of assets held by Matthew Lupoli. The form states that failure to respond would be punishable by contempt. The remedy for the failure to respond to an information subpoena is an application for an adjudication of contempt pursuant to CPLR 5251, which states, "Refusal or willful neglect of any person to obey a subpoena or restraining notice issued, or order granted, pursuant to this title; false swearing upon an examination or in answering written questions; and willful defacing or removal of a posted notice of sale before the time fixed for the sale, shall each be punishable as a contempt of court" (see, Miller v Saretsky, 171 Misc 2d 404).

The questions attached to the information subpoena required answers within seven days. When Marguerite Lupoli failed to respond for over three months, the administrator brought this proceeding to hold her in contempt, by order to show cause and petition filed in the Surrogate's Court, Queens County, on May 27, 1999. The petition was thereafter amended upon stipulation.

In July 1999 Marguerite Lupoli moved to dismiss the application to hold her in contempt. Her attorney argued, among other things, that the Surrogate's Court did not have jurisdiction to entertain proceedings concerning the enforcement of decrees directing the payment of money.

In an order dated September 14, 1999, the Surrogate granted the motion, stating, among other things:

"The Surrogate's Court had at one time under the terms of Surrogate's Court Act 83 the power to issue executions on its own decrees. However, this power was eliminated by the enact-

ment of the SCPA and more particularly SCPA 605 which provides that, 'An execution shall not issue out of the court.'

"SCPA 605 and SCPA 603 are very clear. An execution is not to issue from the Surrogate's Court. Enforcement of any decree of the Surrogate's Court shall take place only after a transcript has been docketed as set forth in SCPA 603. Thereafter, the decree or order shall be enforceable by execution as if it were a judgment of the Supreme Court."

In holding that it did not have jurisdiction to entertain this application to hold Ms. Lupoli in contempt, the Surrogate also relied on CPLR 5210 and 5221. CPLR 5210 provides: "Every court in which a special proceeding to enforce a money judgment may be commenced, shall have power to punish a contempt of court committed with respect to an enforcement procedure."

CPLR 5221 governs where an enforcement proceeding may be commenced. After dealing with judgments docketed in various lower courts, the statute states: "In any other case, if the judgment sought to be enforced was entered in any court of this state, a special proceeding authorized by this article shall be commenced either in the supreme court or a county court, in a county in which the respondent resides or is regularly employed or has a place for the regular transaction of business in person or, if there is no such county, in any county in which he may be served or the county in which the judgment was entered" (CPLR 5221 [a] [4]).

Based on these statutes, the Surrogate concluded that he had no power to punish Ms. Lupoli for contempt in connection with an enforcement proceeding. The administrator appeals. We reverse.

None of the statutes relied upon by the Surrogate expressly prohibit the Surrogate from imposing a contempt sanction in this proceeding.

SCPA 603 essentially provides that the Clerk of the Surrogate's Court must furnish transcripts of judgments to "any person," and that such persons *may* docket such transcripts with the Supreme Court. This statute provides as follows:

"1. Clerk to furnish transcript. Upon the application of any person, the clerk must furnish to him a transcript of any decree or order. If it be for other than money only, the clerk shall insert in the transcript a brief statement of the nature of the relief awarded. Such statement may be inserted under 'remarks' as contained in the form set forth in section 255-c of the judiciary law.

"2. Docketing with county clerk. A transcript of a decree or order of the court may be filed in the office of the clerk of the county in which the court is located and upon such filing the clerk shall docket the decree or order in like manner and with like effect as a judgment entered in the supreme court within the county. The filing and docketing and any subsequent filing and docketing with any other county clerk shall be governed by the CPLR."

The docketing procedure described in SCPA 603 (2) essentially provides a mechanism whereby a decree or order of the Surrogate's Court can be summarily converted into the equivalent of a Supreme Court judgment. Upon the conversion of the decree into the equivalent of a Supreme Court judgment, all of the devices of CPLR article 52 become available.

SCPA 605 provides as follows: "An execution shall not issue out of the court. The enforcement by execution of any decree or order of the court shall take place only after the docketing of a transcript as set forth in 603 of this act, whereupon the decree or order shall be enforceable by execution as if it were a judgment of the supreme court."

SCPA 606 states the following:

"1. In any of the following cases, a decree or order of the court, directing the payment of money or requiring the performance of any act, may be enforced by serving a certified copy thereof upon the party against whom it is directed, and if he refuses or wilfully neglects to obey it, by punishing him for a contempt of court:

"(a) Where it cannot be enforced by execution.

"(b) Where part of it cannot be enforced by execution; in which case the part or parts which cannot be so enforced may be enforced as prescribed in this section.

"(c) Where an execution as prescribed in the preceding section has been returned wholly or partly unsatisfied.

"(d) Where the delinquent is a fiduciary and the decree relates to the estate, in which case the court may enforce the decree or order as prescribed in this section, either with or without requiring the issuance of an execution, or after the return of an execution, as it deems proper.

"2. For the purpose of enforcement of a decree or order by means of punishment for contempt of court, the proceeding which terminated in such decree or order is deemed continued.

"3. The court may refuse to punish any person for contempt of court as authorized in this section, in an instance in which

facts are demonstrated to its satisfaction which would justify a release of such person from imprisonment, in accordance with the provisions of section 775 of the judiciary law.

"4. No proceedings taken to enforce a decree or order of the court, either by execution, punishment for contempt or otherwise, shall preclude or affect in any manner an action or proceeding on a bond given by the person against whom the decree or order was directed."

Nothing in the foregoing statutes expressly prevented the Surrogate from entertaining the application to hold Ms. Lupoli in contempt. It is true that SCPA 605 states that "[a]n execution shall not issue" from the Surrogate's Court. However, the estate in this case is not attempting to have the Surrogate issue an execution. An execution is basically a document issued to the court's enforcement officer, usually the sheriff, directing that he or she levy against non-exempt property or income of a judgment creditor. SCPA 605 is not applicable here for the basic reason that no one is requesting that the Surrogate's Court issue an execution.

As for SCPA 603, it is clear that its terms are permissive. A transcript of a Surrogate's Court decree "may" be filed in the Supreme Court so that the judgment debtor, in this case the estate, may apply to that court for enforcement of the judgment.

As for SCPA 606, it simply defines certain conditions under which a Surrogate may hold a person in contempt. However, the Surrogate's power to hold a person in contempt is not limited to the conditions found in this section. For example, Judiciary Law § 753 states:

"A. A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases * * *

"5. A person subpoenaed as a witness, for refusing or neglecting to obey the subpoena, or to attend, or to be sworn, or to answer as a witness."

In accordance with this statute, it has been held that the Surrogate has the power to punish, with an adjudication of contempt, bailees of an automobile owned by an estate after they disobeyed an order calling for production of the vehicle (see, Matter of Re v Smith, 240 AD2d 219). Similarly, in Matter

*of Drimmer* (97 AD2d 792), this Court held that a Surrogate had the authority to impose a contempt sanction against a trustee who failed to obey an order requiring him to submit an accounting. Several courts have held that the failure to comply with a subpoena duces tecum, or with a subpoena issued in connection with an enforcement proceeding, can be the basis for a finding of contempt (*see, e.g., Commissioner of Labor of State of N. Y. v Hinman,* 103 AD2d 886; *Metropolitan Life Ins. Co. v Young,* 157 Misc 2d 452).

. Assuming that the Surrogate's Court has the power to punish for contempt in connection with a postjudgment information subpoena pursuant to the Judiciary Law, the question becomes whether that power was in effect taken away by CPLR 5210 and 5221, relied upon by the Surrogate. As noted, the former statute is specifically addressed to the power to punish for contempt "with respect to an enforcement procedure" (CPLR 5210), and states that such contempt proceedings may be brought in those courts where special proceedings to enforce money judgments may be brought. The latter statute requires that for judgments not entered in various city, district, or municipal courts, article 52 enforcement proceedings "shall" be commenced either in the Supreme or the County Court. The language of CPLR 5221 is not permissive; it is mandatory.

In general, a specific statute that is inconsistent with a general statute should govern. Thus, while the Judiciary Law is addressed to the contempt power of all courts of record in general, CPLR 5210 is directly addressed to the power to punish for contempt "with respect to an enforcement procedure," and this statute specifies that such proceedings may be brought only in those courts where the enforcement proceedings themselves are pending. CPLR 5221 (a) (4) then states, in effect, that the judgment under review here may be enforced only in the Supreme or the County Court.

In light of the foregoing, we cannot fault the Surrogate in this case for reaching the conclusion that under the applicable statutory law, any proceeding brought under CPLR article 52 to enforce the money judgment, as well as any contempt application ancillary to such a proceeding, should have been brought in the Supreme Court. The major question to be decided is whether the Surrogate may, in effect, go beyond the confines of his jurisdiction as defined in the applicable statutes, and derive jurisdiction directly from NY Constitution article VI. The decision of the Court of Appeals in *Matter of Piccione* (57 NY2d 278, *supra*) states that he may do so.

In *Matter of Piccione (supra),* an estate was the owner of certain real property which had been leased to a tenant. The estate contracted to sell the property at the end of the lease, but when the lease expired, the tenant did not depart. The estate brought a proceeding in the Surrogate's Court, Nassau County, to direct the tenant to vacate the premises. The Surrogate granted the petition. This Court reversed, holding that the proceeding was an "independent controversy * * * outside of the subject matter jurisdiction of the Surrogate's Court" (*Matter of Piccione,* 85 AD2d 604, 605). The Court of Appeals reversed, and held that the Surrogate acted within his jurisdiction.

The Court of Appeals stated that "a proceeding, brought by the executors in the process of attempting to wind up the administration of the estate, is cognizable in the Surrogate's Court" (*Matter of Piccione,* 57 NY2d, *supra,* at 290). The Court of Appeals found that the proceeding was one relating to the affairs of decedents so that the Surrogate's Court had jurisdiction pursuant to the terms of NY Constitution, article VI, § 12 (d), even in the absence of a statute specifically granting the Surrogate's Court jurisdiction in a proceeding of this type. The Court also rejected the argument that because RPAPL 701 does not list the Surrogate's Court as one of the courts with jurisdiction in proceedings to recover real property, the Legislature intended to preclude the Surrogate's Court from exercising such jurisdiction (*see, Matter of Piccione, supra*).

The parallels between *Matter of Piccione (supra)* and the present case are obvious. At the heart of each case was a statute or a group of statutes which, by their terms, appeared to give exclusive jurisdiction over a certain type of proceeding to certain courts, which did not include the Surrogate's Court. The statute in *Matter of Piccione (supra)* states, "A special proceeding to recover real property may be maintained in a county court, the court of a police justice of the village, a justice court, a court of civil jurisdiction in a city, or a district court" (RPAPL 701 [1]). The Court of Appeals held that, despite the statutory listing of certain courts, not including the Surrogate's Court, the Surrogate's Court could entertain such a proceeding when it related to a decedent's estate. Here, as noted above, CPLR 5221 lists the County Court and Supreme Court as those in which article 52 enforcement proceedings may be brought. CPLR 5210 then empowers those courts to impose the sanction of contempt in appropriate cases. Under the rationale of *Matter of Piccione (supra),* whereby the Surrogate can derive power

directly from the Constitution without the need for a specific statute, the Surrogate in the present case should have the power to enforce money judgments under CPLR article 52, even though the CPLR itself seems to confine this power to the Supreme Court and the County Court (except in the case of lower court judgments).

The analogy between the case at hand and *Matter of Piccione (supra)* is not perfect, however. Upon examination of the terms of RPAPL 701, one notes that the statute defines the courts in which a special proceeding to recover real property "may" be brought. Clearly, the statute, by its literal terms, cannot properly be considered as an exclusive list of courts wherein such a proceeding may be brought. That this is true becomes more apparent when one notes that nothing in this statute could deprive the Supreme Court, New York's general court of trial jurisdiction, of its jurisdiction in such cases. CPLR 5221, in contrast, is phrased in what appears to be mandatory language. It states that article 52 enforcement proceedings "shall" be brought in the Supreme or County Court.

These distinctions notwithstanding, we conclude that the essential rationale of the Court of Appeals reflected in *Matter of Piccione (supra)* applies here. The information subpoena, like the judgment, clearly relate to the affairs of a decedent. It also goes without saying that there is a practical advantage to allowing the Surrogate to exercise jurisdiction in this case, in that the Surrogate is familiar with what has become a fairly complicated matter, and thus is in the best position to sit in judgment over the parties as their dispute continues.

For the foregoing reasons, we conclude that the Surrogate has jurisdiction. The order is therefore reversed insofar as appealed from, on the law, with costs payable by the respondent personally, and the matter is remitted to the Surrogate's Court, Queens County, for further proceedings on the application to hold the respondent in contempt.

THOMPSON, GOLDSTEIN and McGINITY, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs payable by the respondent personally, and the matter is remitted to the Surrogate's Court, Queens County, for further proceedings on the application to hold the respondent in contempt.