OPINION OF THE COURT
Renee R. Roth, S.
This is yet another chapter in the seemingly never ending litigation surrounding the estate of Abraham Warsaski. The current litigation which began as a request by the attorney for the unsuccessful objectants in the probate contest to be relieved as counsel and to have the court fix her fee has now mushroomed with counterclaims by one of the objectants alleging malpractice and breach of contract and challenging the authority of this court to decide any of these matters. In order to fully appreciate the current claims and counterclaims it is necessary to briefly review the tortured history of this estate.
Mr. Warsaski died in 1993 survived by two nephews, Marshall Spiegel and Michael Spiegel (the Spiegels), both domiciled in Illinois. Under his last will dated September 15, 1992 as well as under three earlier wills (1991, 1990 and 1986), testator left his entire estate of approximately $800,000 to charity and specifically disinherited his nephews.
The Spiegels, appearing pro se, filed objections to the propounded will in December 1993. After several discovery *555 disputes, which the court in its decision noted arose from the inexperience of the pro se objectants (Matter of Warsaski, NYLJ, Aug. 11, 1994, at 24, col 6), they retained an Illinois attorney in May 1995, who was admitted pro hac vice. This lawyer represented objectants in a summary judgment motion, including the appeal of this court’s decision thereof (Matter of Warsaski, NYLJ, Jan. 4, 1996, at 27, col 2, affd 228 AD2d 275), discovery, pretrial motions and trial preparation.
The contest was scheduled for trial in 1996 but was adjourned until March 1997 at which time it was again adjourned because counsel was actually engaged in another trial. Thereafter objectants’ lawyer sought leave to withdraw citing irrevocable differences with his clients. The application was granted, the proceeding was stayed so that objectants could retain new counsel and the parties were notified that they were to select a jury on September 5, 1997 and commence trial on September 8, 1997 (Matter of Warsaski, NYLJ, June 4, 1997, at 27, col 5).
Objectants attempted to retain a second Illinois attorney (who had represented Marshall Spiegel in an unsuccessful defamation suit brought against decedent’s estate in Illinois) to represent them at trial. As noted in the decision granting objectants’ first Illinois counsel permission to withdraw, the rules for admission pro hac vice had changed so that objectants were now required to retain local counsel before the court, in its discretion, could consider admitting another out-of-state attorney. Objectants subsequently retained petitioner, a New York attorney, who appeared and moved to admit the second Illinois attorney pro hac vice. The court denied the motion and also denied the request for a further adjournment of the trial date.
At trial, objectants attempted to introduce into evidence photocopies of papers allegedly typed by decedent some of which purportedly also contained his signature or handwriting. Objectants, however, were not able to authenticate these papers and their admission into evidence was accordingly denied. Since they were not in evidence, objectants’ expert witness, a psychiatrist who had not treated decedent or examined his medical records, could not use them as the basis for his testimony (Cassano v Hagstrom, 5 NY2d 643, 646).
Objectants’ request for an adjournment so that they could obtain handwriting experts and other witnesses who would allegedly identify decedent’s handwriting on the photocopied papers, which it is noted were voluminous and in no understandable order, was denied because objectants had more than *556 ample time (four years) to prepare for trial. Indeed, in its decision of January 4, 1996, denying the motion for summary judgment dismissing the objection as to testamentary capacity, this court observed that
“[n]o proof has been offered that the writings are of a kind accepted in the profession as reliable in forming a psychiatric opinion, but, for purposes of this motion, the court assumes, without deciding, that these letters and other materials were written by decedent and would be admissible at trial” (Matter of Warsaski, NYLJ, Jan. 4, 1996, at 27, col 2 [emphasis added], affd 228 AD2d 275, supra).
At the conclusion of the trial proponent’s motion for a directed verdict was granted. After a motion for a new trial was denied, Marshall Spiegel, acting pro se, unsuccessfully appealed such decision while the instant proceeding was pending (Matter of Warsaski, NYLJ, Oct. 22, 1997, at 29, col 6, affd 258 AD2d 379, lv denied 93 NY2d 810).
With this background we turn to the latest applications. By order to show cause Ms. Rowland, objectants’ latest former attorney, asked to be relieved and to have her legal fees and disbursements fixed and determined in the sum of $17,704.57 ($21,547.57 less $3,840 paid on account). Marshall Spiegel, again initially appearing pro se but subsequently through counsel, answered and filed counterclaims contending that but for Ms. Rowland’s erroneous advice, he and his brother would have accepted a settlement offer of $108,000. He seeks damages of $115,000 plus costs and attorney’s fees incurred in this proceeding. Although Marshall has counterclaimed in this court on the grounds of malpractice and breach of contract, he has also commenced an action in the Circuit Court, Cook County, Illinois, for essentially the same relief and contends that such court should determine the issue because Ms. Rowland was retained in that jurisdiction. He also claims that this court lacks jurisdiction to determine Ms. Rowland’s application for legal fees because it involves a dispute between living persons. Finally he asks the court to recuse itself on the ground of bias.
With respect to the recusal application Marshall alleges two indicia of bias. He claims that Rowland told the Spiegels that the court would deny their request to admit another Illinois attorney pro hac vice “so that Spiegel would be forced to accept a settlement offer.” His second ground is an alleged statement by the court allegedly relayed by Rowland to the second Illinois *557 attorney objectants attempted to retain, that the court would try to help Rowland if she were sued for malpractice. Rowland, in her reply papers, refutes both allegations. Obviously the court cannot know what counsel said to her clients or anyone else but the court never made such statements. The law governing recusal provides that “[a]bsent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal.” (People v Moreno, 70 NY2d 403, 405; Matter of Drier, 245 AD2d 787; Matter of Weinman, NYLJ, Dec. 16, 1997, at 27, col 1, affd 261 AD2d 147.) Since these hearsay allegations are without merit, the motion for recusal is denied.
We turn next to Marshall’s contention that this court lacks jurisdiction over Rowland’s fee application. Citing Matter of Lainez (79 AD2d 78, affd 55 NY2d 657) and Matter of Dicosimo (180 Misc 2d 89), he argues that since Rowland’s fee application is a dispute between living persons the court is precluded from deciding the issue.
Although Rowland’s claim for compensation for legal services rendered to the distributees may be characterized as a dispute between living persons, it arises out of services rendered in a probate contest tried before this court. Thus, “the Surrogate’s Court is in a unique position to determine the amount of fees owed to a plaintiff in light of the extensive litigation that has taken place in that court.” (Rosenman & Colin v Winston, 205 AD2d 451; see also, Matter of Levine, 262 AD2d 80.) To find otherwise would mean that the jurisdiction of the court is dependent upon the success or failure of objectants’ underlying claim against decedent’s estate, a result that would not only promote a multiplicity of actions in different courts (Matter of Vizzie, 120 Misc 2d 161) but would run counter to the modem trend expressed in Matter of Piccione (57 NY2d 278), and its progeny, that fragmented justice is no justice.
Neither Lainez (supra) nor Dicosimo (supra) requires a different result. As the Court of Appeals observed in Matter of Piccione (supra, at 289-290), Lainez merely stands for the proposition that a dispute between a creditor and a distributee that has no relationship to a decedent’s estate is outside the Surrogate’s Court’s jurisdiction absent a showing that the distributee assigned his share of decedent’s estate to the creditor. Similarly, Matter of Dicosimo (supra), where the legal services had not been rendered in the Surrogate’s Court and only tangentially related to the affairs of the decedent’s estate, does not suggest a different result.
Moreover, the court’s jurisdiction is not affected by the fact that the fee is to be paid by an individual other than the fidu *558 ciary of the estate (Rosenman & Colin v Winston, supra; Matter of Levine, supra; Matter of Driscoll, 273 AD2d 381). Nor is the court’s jurisdiction to fix attorney’s fees conditioned upon the existence of funds in the hands of the fiduciary belonging to such individual (Rosenman & Colin v Winston, supra; Matter of Mandeau, NYLJ, Aug. 15, 1996, at 23, col 2). Under the circumstances presented here, the court not only has jurisdiction over Rowland’s claim but is in the best position to determine what, if any, fee she should be awarded for the services she rendered to objectants in connection with the probate contest.
The court’s jurisdiction also includes the determination of Marshall’s counterclaims on the grounds of legal malpractice and breach of contract (based on the same acts and omissions allegedly constituting malpractice). Section 201 (3) of the Surrogate’s Court Procedure Act provides that the court has full jurisdiction to “determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, * * * over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.” The determination of an appropriate legal fee encompasses and is necessarily intertwined with the question of whether the attorney seeking the compensation has negligently performed his or her duties as attorney. Furthermore, malpractice is a defense to any fee application and an attorney is not entitled to any fee where the legal services were performed in a negligent fashion (Martin, Van de Walle, Guarino & Donohue v Yohay, 149 AD2d 477, 480). Finally, under well established case law, a judicial determination fixing the value of professional services necessarily decides that there was no malpractice (Blair v Bartlett, 75 NY 150).
Accordingly, this court’s jurisdiction to fix and determine Rowland’s compensation for services rendered in the probate proceeding also encompasses Marshall’s counterclaims for legal malpractice and breach of contract.
We turn now to Marshall’s counterclaims for legal malpractice and breach of contract which Rowland has moved to dismiss. Although Marshall makes several general allegations, including Rowland’s inexperience and failure to prepare for trial, to conduct discovery and to raise evidentiary and other objections during trial, the essence of his malpractice, claim is that because of Rowland’s erroneous advice on three critical is *559 sues he and his brother did not accept proponent’s alleged settlement offer of $108,000. These issues turn on whether CPLR 4519 (the Dead Man’s Statute) would: (1) bar Marshall’s testimony regarding his relationship to his uncle, (2) prevent him from authenticating those papers discussed above, and (3) whether objectants’ expert witness could form an opinion based on unauthenticated papers.
Marshall, however, concedes that Rowland correctly advised that it was unlikely that he would be allowed to testify. Consequently, as to the first of the three critical issues, a claim for malpractice does not exist. With respect to the remaining two issues, that there was a reasonable likelihood that “he would be permitted to authenticate the papers and that without question the psychiatrist would be able to form an opinion” upon the ultimate issues in the probate contest based upon the papers regardless of their admissibility, Marshall contends Rowland’s alleged advice constituted legal malpractice.
In order to recover damages for legal malpractice, Marshall must prove all three of the following elements: (1) the attorney failed to exercise that degree of care, skill and diligence commonly exercised by an ordinary member of the legal community, (2) the attorney’s negligence was the proximate and direct cause of the loss, and (3) proof of actual damages (Dweck Law Firm v Mann, 283 AD2d 292; Tinter v Rapaport, 253 AD2d 588). Although Marshall has also alleged breach of contract, a review of his affirmation and answer reveals that the breach of contract claim is based on the same conduct resulting in the same loss as the malpractice claim and is therefore dismissed as simply a duplicative pleading (Tyborowski v Cuddeback & Onofry, 279 AD2d 763; Travis v Haskel, Hand & Lancaster, NYLJ, Jan. 5, 2001, at 33, col 6).
With respect to the first element, the issue of Rowland’s alleged negligence, expert testimony would perhaps be required to establish whether she failed to exercise the requisite level of care and skill in this case. But this point need not be belabored because Marshall cannot sustain either the second or third elements of his counterclaim for malpractice.
As to the second element, Marshall’s contention that Rowland’s alleged negligence was the sole reason that he and his brother did not accept the settlement offer, to the extent that it can even be construed as constituting a factual predicate on which a claim for malpractice would lie, is contradicted by statements made by him, and on his behalf, in papers previ *560 ously filed with the court. For a telling example, in his affidavit opposing the request of his first Illinois attorney to be relieved, Marshall stated that proponent’s settlement offer made at that time could not be “adequately assessed” without first requiring proponent to account. In addition, the court’s staff on many occasions with both objectants’ prior Illinois lawyer and Rowland, and the court on the morning of trial, attempted to settle the case. It is noted that Rowland, in her response points out that “Michael Spiegel wished to accept proponent’s offer but Marshall Spiegel would not.” Viewed in this context, Marshall’s counterclaims consist of nothing more than unsupported factual allegations and conclusory legal argument which do not meet the threshold requirements to maintain a claim for legal malpractice (Dweck Law Firm v Mann, supra).
But even if Marshall’s allegations are viewed as sufficient to support his claim that Rowland’s alleged incorrect advice constitutes negligence which was the proximate cause of object-ants’ loss, Marshall’s malpractice claim would still fail because his alleged damages are too speculative and unascertainable. Other than his conclusory allegation that “he would have accepted proponent’s $108,000 settlement offer” he has presented nothing to support his alleged damages. The recent decision in Cannistra v O’Connor, McGuinness, Conte, Doyle, Oleson & Collins (286 AD2d 314) illustrates this point. In Cannistra a jury awarded $900,000 after finding that plaintiffs’ attorney committed malpractice by failing to inform his clients of a deadline in which to accept a settlement offer of $1,200,000 made in the underlying personal injury action. The deadline passed and the action was subsequently dismissed against the defendant. In reversing as a matter of law, the Court observed that in connection with the malpractice action “plaintiffs failed to demonstrate that, but for the [plaintiffs’ attorney’s] alleged negligence, they would have accepted the [defendant’s] settlement offer and not have sustained any damages” (Cannistra v O’Connor, McGuinness, Conte, Doyle, Oleson & Collins, supra at 316).
Based upon the foregoing, the counterclaims alleging malpractice and breach of contract are dismissed. Because of such dismissal, Marshall is not entitled to a jury trial (Matter of Luria, 63 Misc 2d 675) and his request is therefore denied. Furthermore, since all that is now left is a typical fee dispute where the record contains ample evidence (including Ms. Rowland’s affirmation of services) to enable the court to assess the value of such services, a hearing would not add anything (Mat *561 ter of Guattery, 278 AD2d 738; Matter of Berley, NYLJ, Feb. 21, 1989, at 23, col 4).
Accordingly, based upon the record and the criteria cited in Matter of Freeman (40 AD2d 397, affd 34 NY2d 1; Matter of Potts, 213 App Div 59, affd 241 NY 593), Ms. Rowland’s fee is fixed in the amount requested together with disbursements in the sum of $245.42.