Victor L. GANOE, Thomas A. Ganoe, Edwin A. Ganoe, Daniel K. Ganoe, Sandra I. Ganoe Collar, Mary G. Ganoe Price, Cherrie Ganoe Lo Destro, and Cleo Ganoe Smith, Maternal Heirs of Howard R. Hughes, Jr., Deceased, and William A. Jones, as Authorized Agent and Representative of 300 Paternal Heirs of Howard R. Hughes, Jr., Deceased, Plaintiffs,

v.

William LUMMIS, Temporary Administrator of the Estate of Howard Robard Hughes, Jr., Defendant.

No. 86 Civ. 4859 (RJW).

United States District Court, S.D. New York.

June 4, 1987.

Richard D. Grisanti, Buffalo, N.Y., for plaintiffs.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., for defendant; Alexander C. Cordes, Arthur M. Sherwood, of counsel.

ROBERT J. WARD, District Judge.

Plaintiffs, self-proclaimed "close relatives" of the late recluse billionaire Howard R. Hughes, Jr., have commenced this action seeking injunctive and monetary relief against defendant as fiduciary of the Hughes estate on the grounds that defendant entered into a conspiratorial arrangement to determine the disposition of the estate by the Texas probate court. Defendant has moved to dismiss the action on all the grounds contained in Rule 12(b), Fed.R.Civ.P., and for sanctions under Rule 11, Fed.R.Civ.P. Plaintiffs have cross-moved for sanctions under Rule 11, Fed.R. Civ.P. For the reasons to follow, the Court grants defendant's motion to dismiss the complaint. That portion of defendant's motion seeking sanctions is adjourned pending a hearing on the application for fees. Plaintiffs' cross-motion for sanctions is denied.

## BACKGROUND

Howard R. Hughes died intestate on April 5, 1976. On April 14, 1976, the Probate Court of Harris County, Texas (the "Probate Court") appointed defendant William R. Lummis and his mother Annette Gano Lummis Temporary Co-administrators of the Hughes Estate. By a judgment dated April 10, 1978, the Probate Court determined that Howard R. Hughes had died a domiciliary of Texas, that a purported 1968 will was not valid, that the Texas Court had "the sole jurisidiction over the administration of Decedent's real and tangible personal property situated in this State and Decedent's intangible personal property wherever situated," and that "the laws of intestacy of the State of Texas are applicable as to Decedent's personal property, both tangible and intangible, wherever situated, and Decedent's real property situated within this State." Defendant's Memorandum of Law in Support of Motion for Dismissal, Appendix 39–40 ("Defendant's App."). Pursuant to its authority, the Probate Court appointed an attorney *ad litem* to represent the unknown heirs of the estate. The attorney *ad litem* sent letters to potential relations notifying them of the heirship proceedings. Richard D. Grisanti, attorney for plaintiffs in the instant proceeding, received this notification. On August 14, 1981, four of the present plaintiffs filed in the Texas proceedings an affidavit and geneology claiming that they were paternal relations of Howard R. Hughes.[1]

Beginning in July, 1981, the Probate Court conducted a four-phase proceeding to determine the rightful heirs of Howard R. Hughes.[2] A jury determined on September

1. Plaintiffs Thomas A. Ganoe, Mary G. Ganoe Price, Cleo Ganoe Smith, and Cherrie Ganoe Lo Destro filed a submission in the probate proceeding claiming to be related through great, great, great, great, great, great grandparent Stephen Gano who had been born in France in 1652.

2. In the first phase of the proceeding, the Probate Court determined the claims of any wives, children, brothers, sisters, or descendants of brothers and sisters, or parents of Hughes. In an order dated July 23, 1981, the Probate Court concluded that Hughes left no surviving wife,

mother, father, child or descendent thereof, brother or descendant thereof, or sister or descendant thereof. Defendant's App. 107. On August 10, 1981, the Probate Court commenced the second phase of the proceeding to determine the maternal moiety of Hughes' estate. The Probate Court next determined, with the aid of a jury, phase three, the heirship of the paternal moiety, except for the claims of Rush Hughes and Avis Hughes McIntyre. In the final phase, the Probate Court determined the claims of Rush Hughes and Avis Hughes McIntyre. *Id.* at 107–15.

4, 1981 that the paternal grandparents of Howard R. Hughes left three descendants who survived him. This finding excluded under Texas law any other paternal claimants who were unable to establish descent from Hughes' paternal grandparents. The jury specifically rejected a claim by a competing group of paternal heirs that Rupert Hughes, a deceased paternal uncle of Howard R. Hughes, had been impotent and could not have fathered his daughter, Elsbeth Hughes Lapp, the deceased mother of the three individuals finally determined to be the paternal heirs. On November 13, 1981, the Probate Court entered a final judgment determining that only descendants of the grandparents of Howard R. Hughes were entitled to share in his estate as intestate distributees under applicable Texas law.

The Ganoe plaintiffs did not appeal from the Probate Court's final judgment, but nevertheless filed an original motion dated May 3, 1985 and an amended motion dated May 29, 1985 to reopen the maternal heirship proceedings and set aside the November 13, 1981 judgment. The Probate Court heard oral argument on the matter and reopened the proceedings. On August 30, 1985, the Probate Court granted summary judgment dismissing the claims of the Ganoe plaintiffs to be entitled to share in the Hughes estate. The Court of Appeals for the First Supreme Judicial District of Texas dismissed the appeal of the decision by the Probate Court for failure to file a bond. The Texas Supreme Court dismissed the application for a writ of error for want of jurisdiction.

Richard D. Grisanti next filed suit in the New York Supreme Court, Erie County, on behalf of the Ganoe plaintiffs and on behalf of William A. Jones who supposedly represents 300 paternal heirs of Howard R. Hughes. The complaint in that action alleged that the defendant entered a conspiratorial agreement to dispose of the assets of the Hughes estate and that the Texas courts illegally aided the conspiracy through a pattern of misfeasance, malfeasance and nonfeasance. The plaintiffs requested various monetary and injunctive relief. In a decision dated May 29, 1986, that court dismissed the case for lack of personal jurisdiction over Lummis.

Undeterred, plaintiffs' counsel filed the present proceeding alleging essentially the same facts contained in the complaint filed in the New York Supreme Court. Specifically, plaintiffs request this Court to 1) open the Texas probate proceedings to vacate all judgments and orders, particularly those in the heirship proceeding, 2) allow them a full and complete hearing on their claims to the Hughes estate, 3) enjoin distribution of the assets of the Hughes estate, 4) order a complete auditing and accounting of the Hughes estate, and 5) grant them judgment, in the aggregate, of two billion dollars. Defendant has moved to dismiss the complaint and for sanctions. Plaintiffs have cross-moved for sanctions.

## DISCUSSION

I. Subject Matter Jurisdiction.

A. The Probate Exception.

■ A federal court has no jurisdiction to probate a will, administer an estate, or entertain any action that would interfere with probate proceedings pending in a state court or with its control over property in its custody. *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Celentano v. Furer*, 602 F.Supp. 777, 779 (S.D.N.Y.1985). The probate exception to federal jurisdiction clearly bars the Court from entertaining an application for much of the relief sought by plaintiffs. This Court may not vacate any judgments entered in the Texas Probate Court, enjoin distribution of the assets of the Hughes estate, order an audit or accounting of the estate, or order the estate to pay plaintiffs the sum of two billion dollars. *See Dannhardt v. Donnelly*, 604 F.Supp. 796, 800 (E.D.N.Y.1985). Accordingly, the Court dismisses under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction, so much of the complaint as seeks this relief.

■ The probate exception does not, however, preclude a federal court from exercising jurisdiction to adjudicate rights to the property of an estate "where the final

judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Markham v. Allen, supra,* 326 U.S. at 494, 66 S.Ct. at 298; *Celentano v. Furer, supra,* 602 F.Supp. at 779. As the Second Circuit Court of Appeals has stated:

> The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes,* enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.

*Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir.1972). By this standard, "[i]t generally is not considered an interference with state proceedings for a federal court to declare whether a party has the right to share in an estate. Indeed, doing so has been held specifically within the equity jurisdiction of the federal courts." 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3610 (2d ed. 1984) ("Wright & Miller").

■ Interpreting and liberally construing the second and fifth aspects of plaintiffs' claim for relief as seeking a declaration that they are entitled to a portion of the Hughes estate, this Court would have the power to entertain the action so long as plaintiffs have established as well either a federal question or diversity as a basis of federal court jurisdiction. *Id.*

### B. Federal Question Jurisdiction.

■ Although plaintiffs ritually intone that the Texas proceedings deprived them of " 'due process' and 'equal protection of the law' under the fifth and fourteenth amendment," complaint ¶ 2, the circumstances of this case point out beyond cavil the clear lack of any cognizable federal question. Because the due process and equal protection clauses limit only the power of government, a showing of state action is required to violate those constitutional

rights. Plaintiffs have made no argument and the Court is unaware of any precedent for the proposition that defendant Lummis clothed himself in the power of the state once he assumed his position as administrator of the estate of Howard R. Hughes. Consequently, in the absence of any state action by defendants, there could be no constitutional violation on which to premise federal jurisdiction.

■ Alternatively, even were the Court to equate Lummis' actions with those of the state, principles of abstention preclude this Court from hearing plaintiffs' complaint. In its recent decision in *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1, 55 U.S.L.W. 4457 (1987), the Supreme Court elaborated the applicability of the principles of federalism enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to civil as well as criminal proceedings. The first premise of the *Younger* decision was "the basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law." *Id.* at 43, 91 S.Ct. at 750; *see Pennzoil Co. v. Texaco Inc., supra,* —— U.S. at ——, 107 S.Ct. at 1525, 55 U.S.L.W. at 4459–60. Here, plaintiffs had adequate opportunity to appeal the decision of the Probate Court through the appellate procedure provided in the Texas courts. Although plaintiffs contend that a mere technicality of not filing a bond precluded their seeking review in Texas, they may not now forge a key to the federal courthouse out of their misfeasance in failing to post the required bond. Such a preposterous argument would allow any aggrieved party to circumvent the state appellate process simply by failing to comply with the state's procedural requirements.

■ The second premise of *Younger* abstention concerns comity, "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere

with the legitimate activities of the States." *Younger v. Harris, supra,* 401 U.S. at 44, 91 S.Ct. at 750. Comity mandates abstention whenever "the States' interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco Inc., supra,* —— U.S. at ——, 107 S.Ct. at 1526, 55 U.S.L.W. at 4460. In light of the significant state interest in efficiently administering the estates of its decedents in a single proceeding and in view of the opportunity to pursue federal challenges to those proceedings within the state courts, the principle of comity bids restraint here.

### C. Diversity.

 Plaintiffs have not adequately alleged diversity jurisdiction. The party seeking to invoke federal jurisdiction on the basis of diversity must affirmatively allege the existence both of diversity of citizenship and the requisite amount in controversy. Diversity between the parties must be complete, that is none of the opposing parties may be citizens of the same state. *Strawbridge v. Curtis,* 3 Cranch 267, 2 L.Ed. 435 (1806). Naked allegations that the parties are citizens of different states, absent an averment of the particular states of which the parties are citizens, are insufficient to meet the pleading requirement. The sole jurisdictional averment, contained in paragraph one of the complaint, that "[f]ifteen of the Plaintiffs herein, are citizens of the State of New York," plainly fails to establish diversity jurisdiction. Accordingly, the Court dismisses the complaint for lack of subject matter jurisdiction.[3]

### II. Personal Jurisdiction.

Plaintiffs' counsel first instituted suit in the New York Supreme Court, Erie County on July 3, 1985. In a decision dated May 29, 1986, Justice Kasler dismissed that suit for lack of personal jurisdiction over the defendant William R. Lummis.

With respect to plaintiffs' claims the result [of jurisdiction] should be evident. Howard R. Hughes, Jr. died a non domiciliary of the State of New York without owning any real or personal property or other assets in the State of New York. His estate was administered in a foreign forum by fiduciaries appointed or acting on behalf of the estate in that same forum and not in New York. Simply put, as urged by defendants, there is absolutely *nothing* to connect the courts of this State with the foreign administration of the estate of Howard R. Hughes, Jr.

Defendant's App. at 519 (emphasis in the original). Despite the unambiguous basis of Justice Kasler's decision, plaintiffs have persisted here in their efforts to obtain a portion of the Hughes estate. The Court will consider then whether plaintiffs now adequately allege any basis for personal jurisdiction.

 The party invoking the jurisdiction of the federal courts bears the burden of establishing the court's jurisdiction over a nonresident defendant. Defendant Lummis contests the Court's personal jurisdiction. Plaintiffs therefore must provide competent proof that the Court may validly exercise personal jurisdiction over him. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Assuming *arguendo* that this action could be premised on diversity, personal jurisdiction over Lummis would be determined by reference to relevant New York jurisdictional statutes. Rule 4(e), Fed.R.Civ.P.; *see United States v. First National City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965).

---

**3.** The Court usually would dismiss without prejudice a complaint that inadequately pleaded subject matter jurisdiction. In this instance, doing so would be futile inasmuch as the Court plainly lacks personal jurisdiction over defendant William Lummis. The facial invalidity of plaintiffs' jurisdictional allegations also obviates the need for the Court to determine whether plaintiff William A. Jones, the alleged "authorized agent and representative" is a bona fide representative with the legal right to sue and represent the three hundred paternal heirs of Howard R. Hughes so that the Court would look to his citizenship rather than to that of the three hundred supposed heirs in determining diversity. *See* 13B Wright & Miller § 3606.

■ Because defendant Lummis is not a resident of the State of New York, is not doing business within the state, *see* N.Y.Civ.Prac.L. & R. § 301, and was not served with the summons and complaint in New York but rather by mail, plaintiffs must be relying on New York's long arm statute as the basis for personal jurisdiction. *See id.* § 302.

For jurisdiction to exist over an out-of-state defendant under § 302(a)(1), the New York Court of Appeals has held that, at a minimum, "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts." *McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321, 322, 437 N.Y.S.2d 643, 644 (1981). Stated differently, the nonresident defendant must have " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 38 (1967) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *accord McGowan v. Smith, supra,* 52 N.Y.2d at 272, 419 N.E.2d at 322, 437 N.Y.S.2d at 644. In addition, the Court of Appeals has stressed that for jurisdiction to be premised upon § 302(a)(1), there must also be "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith, supra,* 52 N.Y.2d at 273, 419 N.E.2d at 323, 437 N.Y.S.2d at 645.

Defendant Lummis has sworn that he does not own, use, or possess real or personal property located in the State of New York, that he neither now nor ever has contracted to supply goods or services in the State of New York, that he has neither regularly done business in the State of New York nor transacted business in the State of New York related to the alleged cause of action, that he has not engaged in any persistent course of conduct in the State of New York, and, finally, that none of the acts alleged in the complaint occurred in the State of New York. Affidavit of William R. Lummis at ¶¶ 4–18 (sworn to August 2, 1985) (contained in Defendants' App. at 18–19). In light of these disavowals, plaintiffs support their argument for personal jurisdiction on the conclusory assertions that "there [have] been, during the course of the administration of the Estate and prior thereto, numerous 'contracts' in the State of New York in the form of assets and in the form of 'doing business' in the State of New York and said business is still being done herein.... [T]wo, are we naive enough to believe that any business can be transacted in this country, or in the world, without going through New York City, the business capital of the world?" Memorandum of Law In Support of Cross Motion of Defendant [sic, Plaintiffs?] at 4. Plaintiffs have simply made no allegations connecting the injuries they supposedly suffered in Texas with supposed activities in New York concerning assets possibly included in the Hughes estate. This Court, therefore, lacks jurisdiction under § 302(a)(1).

■ Although plaintiffs have not made the specific arguments, the Court would note that none of the other possible bases of long arm jurisdiction appear here. To obtain jurisdiction under the remaining subsections of § 302(a), the acts alleged in the complaint must either have occurred in New York or have had significant New York consequences. Alleged injuries to New York residents that occur outside New York do not create an impact in the state within the meaning of § 302(a)(2). *McGowan v. Smith, supra.* As noted above, defendant Lummis has sworn that he does not engage in any persistent course of conduct in New York or own any real property located in New York. Subsections (a)(3) and (a)(4) are therefore inapplicable as well.[4] In sum, plaintiffs have

---

4. In any event, it is extremely questionable whether plaintiffs could make out an injury within the state. Acts occurring outside the State of New York that allegedly interfere with supposed property interests in an estate being probated in another jurisdiction do not create an injury within the state. *See Porcello v. Brackett,* 85 A.D.2d 917, 446 N.Y.S.2d 780 (4th

failed to allege any adequate basis for personal jurisdiction in the Southern District of New York.

### III. Rule 11 Sanctions.

 The Court's decision to dismiss this suit on the merits obviates the need to consider any of the other grounds asserted by the defendant for dismissing the action beyond noting that most if not all of the other bases for dismissal appear meritorious as well. The conduct of this vexatious litigation by plaintiffs' counsel, both here and in the state courts of Texas and New York, displays astonishing ignorance of applicable substantive law, cavalier indifference to jurisdictional questions, and insolent disregard for binding judicial decisions. The action amounts to an arrogant and completely unwarranted imposition on the federal judiciary. Accordingly, it will be necessary to consider the imposition of sanctions under Rule 11, Fed.R.Civ.P., for plaintiffs' counsel's abuse of judicial process.

### CONCLUSION

Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and for lack of personal jurisdiction is granted. Plaintiffs' cross-motion for sanctions under Rule 11, Fed.R.Civ.P., is denied. Plaintiffs' counsel Richard D. Grisanti is directed to appear before the Court on June 12, 1987 at 10:00 a.m. for a hearing on defendant's application for fees and sanctions under Rule 11, Fed.R.Civ.P. That portion of defendant's motion requesting fees and sanctions is adjourned to that date.

It is so ordered.

---

Dep't 1981), *aff'd,* 57 N.Y.2d 962, 457 N.Y.S.2d 243, 443 N.E.2d 491 (1982) (tort that occurred outside New York did not cause injury within

New York merely because the estate can recover damages in a wrongful death action).