880 F.2d 1578
 UNITED STATES of America, Plaintiff-Appellant,
v.
Richard PIKNA, L. Ruth Beers, Louis H. Ahrensfeldt, New York
State Department of Taxation and Finance, The Client
Security Fund, LeBoeuf, Lamb, Leiby & MacRae, and The
Commissioner of Labor of the State of New York, Defendants-Appellees.
 No. 1267, Docket 89-6046.
 United States Court of Appeals,
Second Circuit.
 Argued June 5, 1989.
Decided July 27, 1989.
 
 Cynthia Keeffe Dunne, Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty., S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., New York City, on the brief), for plaintiff-appellant.
 L. Donald Prutzman, Jr., New York City (Stecher Jaglom & Prutzman, New York City, on the brief), for defendants-appellees Beers and Ahrensfeldt.
 Before FEINBERG and KEARSE, Circuit Judges, and WARD, District Judge.*
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff United States appeals from an order of the United States District Court for the Southern District of New York, Louis L. Stanton, Judge, denying the government's motion to amend its complaint and staying this action pending resolution of a related action in the New York State ("State") Surrogate's Court. The government seeks in the present action to foreclose tax liens filed against defendant Richard Pikna in 1982-1985 and to obtain payment from an escrow fund held by defendant LeBoeuf, Lamb, Leiby & MacRae ("LeBoeuf Lamb") containing fees earned by Pikna. On motion of defendants L. Ruth Beers and Louis H. Ahrensfeldt, who, along with defendants New York State Department of Taxation and Finance ("DOTF") and The Client Security Fund, also had claims against Pikna, the district court stayed the action on the ground that the competing claims of all the parties could be adequately resolved in surrogate's court. For the reasons below, we vacate the stay and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 The events pertinent to the present controversy do not appear to be in dispute. During the years 1981-1984, Pikna practiced law, though not lawfully, in New York. For various tax periods during that time, he failed to pay federal withholding and income taxes; notices of federal tax liens were filed with the New York County Clerk's Office in October 1982, June and December 1983, August 1984, and April 1985. As of March 11, 1988, Pikna owed the government $72,704; interest and penalties have continued to accrue.
 
 A. The Karr-Pikna Fee Proceeding
 
 3
 In 1981, Pikna was retained by Evia Freiberg Karr ("Karr"), widow of David Karr, to represent her in connection with claims she wished to assert against David Karr's estate. If successful, Pikna was to receive 23 percent of Karr's recovery. This representation resulted in a settlement in 1982, awarding Karr one-sixth of the residue of David Karr's estate. Karr subsequently learned that Pikna was not in fact duly licensed to practice law, and she retained LeBoeuf Lamb, who in July 1985 commenced a proceeding in surrogate's court seeking to rescind the retainer agreement. By this time, Pikna was in prison.
 
 
 4
 In the meantime, Beers and Ahrensfeldt, two of Pikna's former clients, had sued Pikna for embezzlement of funds entrusted to him in connection with a real estate transaction. In August 1985, they obtained a judgment against Pikna for $304,800 plus interest. When they discovered that Pikna's only asset was his claim to his fee from Karr, they moved to intervene in the surrogate's court proceeding brought by Karr for rescission of her fee agreement with Pikna. Beers and Ahrensfeldt stated that they did not seek to have the surrogate's court order payment of Pikna's fee to them but sought only to "preserve Pikna's Interest by opposing [Karr's] Petition." The court instead appointed a guardian ad litem to represent Pikna's interests.
 
 
 5
 The dispute between Karr and Pikna was settled at a pretrial conference in December 1987. The United States, though it had been informed of the proceeding and attended this conference, was not a party to either the proceeding or the settlement agreement. The settlement required Karr, out of her recovery from the estate, to pay Pikna $77,500 and to pay his guardian ad litem a fee of $7,500. In addition, the court stated:
 
 
 6
 It is further stipulated and agreed that the moneys, with the exception of the guardian ad litem's fee, will be held either in a separate estate account that will draw interest or in an attorney's escrow account that will draw interest, until the Court resolves the issue of who is entitled to this money.
 
 
 7
 That issue can be resolved in this court if all of the parties agree. If not, it can be decided in any other forum.
 
 
 8
 Pikna's fee has been held in escrow by LeBoeuf Lamb.
 
 
 9
 In January 1988, the Surrogate held a conference, attended by representatives of Beers/Ahrensfeldt and the United States, and proposed that they settle their competing claims to Pikna's fee by splitting Pikna's fee equally. Some weeks thereafter, the government rejected the proposed compromise. Its letter to the Surrogate pointed out, inter alia, that Pikna's federal tax liability exceeded the total amount of the fee and that all of the government's liens on Pikna's assets had been filed months before Beers and Ahrensfeldt obtained their judgment against Pikna. The government stated that it planned to commence an action to foreclose on its liens.
 
 B. The Beers and Ahrensfeldt Proceeding
 
 10
 Promptly after receiving the government's letter, Beers and Ahrensfeldt filed their own petition in surrogate's court, under the caption of Karr's rescission petition, seeking (1) an order requiring payment to them of the escrow fund, and (2) an injunction restraining the government from taking any further action to collect Pikna's back taxes out of the escrow fund. The theory underlying their petition, as explained in the present proceedings, is that they had created the fund by opposing Karr's petition and were thus entitled to have a constructive trust imposed upon it for their benefit. Beers/Ahrensfeldt sought and obtained from the surrogate's court an ex parte temporary restraining order ("TRO") enjoining the government from commencing any action in any other court to claim the escrow funds and from removing the action to federal court.
 
 
 11
 The government moved in the Appellate Division of the Supreme Court to set aside the TRO, contending that the surrogate's court (1) lacked the power to interfere with the government's exercise of rights conferred upon it by federal law--i.e., the right to foreclose on tax liens and the right to remove actions brought against it in state court to federal court, and (2) lacked jurisdiction over the dispute between Beers/Ahrensfeldt and the United States because the dispute has nothing to do with the underlying estate proceeding. The Appellate Division modified the TRO to permit the government to remove the proceeding to federal court, noting that the state court could not forbid removal permitted by federal statutes.
 
 
 12
 The government removed the proceeding to federal court, characterizing the Beers/Ahrensfeldt petition as a claim under 26 U.S.C. Sec. 7426(a)(1) (1982) that the Internal Revenue Service ("IRS") had wrongfully levied on the escrow fund, a claim under 28 U.S.C. Sec. 2410 (1982) for enforcement of their own lien against the fund, and an attempt to enjoin IRS from foreclosing its tax lien. The government asserted that removal was proper under 28 U.S.C. Secs. 1441(a), 1441(b), 1442(a)(1), and 1444 (1982). Thereafter, Beers and Ahrensfeldt withdrew their requests for injunctive relief against the government, one of the bases for removal, and they moved for a remand to state court.
 
 
 13
 In an endorsed memorandum dated May 18, 1988, the district court granted the motion to remand on the ground that the proceeding had been removed "improvidently and without jurisdiction." The court noted that "[o]ne may argue," as did the government, that the surrogate's court lacks jurisdiction to resolve the competing claims of the government and Beers/Ahrensfeldt, but stated that
 
 
 14
 the record is clear that the government's involvement occurred as an incident of the administration of the estate and not as a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the ... laws of the United States." 28 U.S.C. Sec. 1441(b). Nor is a claim asserted against the government, the claim for injunctive relief having been withdrawn.... Although as far as the government is concerned a similar purpose might have been served by a civil action under 28 U.S.C. Sec. 2410, that does not convert the ancillary proceeding in the Surrogate's Court into a removable action to quiet title or to foreclose a lien.
 
 C. The Present Action
 
 15
 In the meantime, in March 1988, the government had commenced the present action in the district court to reduce to judgment its federal tax assessments and to foreclose its liens against the escrow fund. The government named as defendants LeBoeuf Lamb, Pikna, Beers, Ahrensfeldt, The Client Security Fund, and DOTF. Beers/Ahrensfeldt moved to stay or dismiss the action. The government opposed that motion and moved to amend its complaint to add as a defendant the State's Commissioner of Labor.
 
 
 16
 In an endorsed memorandum dated December 30, 1988, the court granted the motion of Beers/Ahrensfeldt to stay the action pending completion of their proceeding in surrogate's court (dubbed "Action # 1"), concluding that abstention under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), was appropriate:
 
 
 17
 Beers and Ahrensfeldt intervened in Action # 1 and by considerable effort obtained $77,500 for Pikna in settlement of his fee claim....
 
 
 18
 ....
 
 
 19
 The factors enumerated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 818 [96 S.Ct. 1236, 1246, 47 L.Ed.2d 483] (1976), and Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 23-26 [103 S.Ct. 927, 941-942, 74 L.Ed.2d 765] (1983) warrant a stay of this action. Two factors are of little import: neither forum is more convenient than the other and both federal and state law provide the rules of decision. However, the Surrogate's Court obtained earlier and in rem jurisdiction over the property in question. Since Beers, Ahrensfeldt, the United States, Pikna, the Commissioner of Labor, and the State Department of Taxation and Finance are all parties to Action # 1, staying this action will avoid piecemeal litigation. Finally, there is no reason to doubt that the state court proceeding will adequately protect the rights of the United States and all other parties.
 
 
 20
 In light of its decision to stay the action, the court denied as premature the government's motion to amend the complaint.
 
 
 21
 This appeal followed.
 
 II. DISCUSSION
 
 22
 On appeal, the government contends principally that the district court's decision to stay the present action was an abuse of discretion because there is substantial doubt as to the jurisdiction of the surrogate's court to resolve the present dispute over entitlement to the Pikna escrow fund. We have considered all of the arguments of Beers and Ahrensfeldt in support of the district court's decision, and we conclude that the stay was an abuse of discretion.
 
 
 23
 The decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court, see Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Moses Cone "); Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("Colorado River "), and will not be overturned on appeal absent a showing of abuse of discretion, see Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir.1989). In determining whether or not to grant such a stay, the district court should consider such factors as (1) whether the controversy involved a res over which one of the courts has assumed jurisdiction, (2) whether one forum is more inconvenient than the other for the parties, (3) whether staying the federal action will avoid piecemeal litigation, (4) whether one action is significantly more advanced than the other, (5) whether federal or state law provides the rule of decision, and (6) whether the federal plaintiff's rights will be protected in the state proceeding. See Moses Cone, 460 U.S. at 15-16, 19-23, 26, 103 S.Ct. at 936-37, 938-41, 942; Colorado River, 424 U.S. at 817-18, 820, 96 S.Ct. at 1246-47, 1247; Cisneros v. Younger, 871 F.2d at 307. No one factor is determinative, and the weight to be given to each may vary substantially from case to case.
 
 
 24
 Though no single factor is determinative, there is one underlying consideration that must affect the district court's assessment, and that is the matter of the state court's jurisdiction to resolve the controversy. On a motion for abstention under Colorado River, the presumption is in favor of the federal court's retaining jurisdiction, not yielding it, see 424 U.S. at 817-19, 96 S.Ct. at 1246-47; Moses Cone, 460 U.S. at 28, 103 S.Ct. at 943 ("a stay is as much a refusal to exercise federal jurisdiction as a dismissal"), and if there is substantial doubt as to the jurisdiction of the state court to resolve the controversy, the federal court may not properly grant the stay. Thus, in Moses Cone, the Supreme Court stated that
 
 
 25
 [w]hen a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.
 
 
 26
 460 U.S. at 28, 103 S.Ct. at 943 (emphasis added).
 
 
 27
 In the present case, we think there is substantial doubt as to the jurisdiction of the surrogate's court to resolve the dispute between the United States and Beers/Ahrensfeldt. The jurisdiction of the surrogate's court, though broadly reaching matters affecting estates, is not unlimited. The New York statute provides, in pertinent part, that that
 
 
 28
 court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.
 
 
 29
 N.Y.Surr.Ct.Proc. Act Law Sec. 201, subd. 3 (McKinney Supp.1989). Notwithstanding the breadth of this provision, the surrogate's court is a court of limited jurisdiction, and the New York appellate courts have consistently ruled that its jurisdiction is limited to matters "relating to estates and the affairs of decedents." See, e.g., In re the Estate of Piccione, 57 N.Y.2d 278, 289-90, 456 N.Y.S.2d 669, 674, 442 N.E.2d 1180, 1185 (1982); In re Lainez, 79 A.D.2d 78, 435 N.Y.S.2d 798 (2d Dep't), aff'd, 55 N.Y.2d 657, 446 N.Y.S.2d 942, 431 N.E.2d 303 (1981).
 
 
 30
 Under state law, if the relationship of the dispute to the estate is attenuated, the jurisdiction of the surrogate's court to resolve it is doubtful. Thus, the New York Court of Appeals has adopted the principle that " 'the Surrogate's Court has no jurisdiction over a claim by a creditor against a distributee or legatee of an estate ... absent a showing that the distributee assigned his share to the creditor.' " In re the Estate of Piccione, 57 N.Y.2d at 290, 456 N.Y.S.2d at 674, 442 N.E.2d at 1185 (quoting In re Lainez, 79 A.D.2d at 80-81, 435 N.Y.S.2d at 800). Where the "dispute [is] between a distributee of the decedent and a creditor of the distributee [and] resolution of the controversy would have no effect upon the estate itself," In re the Estate of Piccione, 57 N.Y.2d at 289, 456 N.Y.S.2d at 674, 442 N.E.2d at 1185, the surrogate's court has no jurisdiction. In In re Lainez, the Appellate Division ruled that the surrogate's court was without jurisdiction to adjudicate the claim of a creditor against the sole heir of an estate when the creditor had no claim against the estate and the heir had not assigned her interest to that creditor. See 79 A.D.2d 78, 435 N.Y.S.2d 798.
 
 
 31
 These principles cast substantial doubt on the jurisdiction of the surrogate's court to resolve the dispute between the United States and Beers/Ahrensfeldt. Though as to Karr's proceeding against Pikna, the surrogate's court presumably had jurisdiction because Karr had a contingent fee agreement with Pikna that was tantamount to an assignment of part of her share of David Karr's estate, the present controversy is two steps farther removed from those cases in which surrogate's-court jurisdiction has been upheld. First, neither the government nor Beers/Ahrensfeldt is a creditor of the David Karr estate or of any distributee of the estate; rather, they are creditors of a creditor of a distributee of that estate. Second, there is no contention that the Karr-Pikna contingent fee arrangement included any assignment by Pikna to any of his creditors of any portion of his fee; nor does any creditor claim that any other arrangement was made for such an assignment. The present controversy is unrelated to the estate or to any interest of any distributee of the estate.
 
 
 32
 Neither In re Proffen's Estate, 175 Misc. 447, 24 N.Y.S.2d 889 (Surr.Ct.N.Y.Co.1940), nor Estate of Rosenfeld, 107 N.Y.L.J. 1714, col. 5, Apr. 23, 1942 (Surr.Ct.N.Y.Co.1942), aff'd mem., 265 A.D. 1039, 39 N.Y.S.2d 1004 (1st Dep't 1943), relied on by Beers and Ahrensfeldt, suggests a contrary result. Though Rosenfeld involved funds earmarked to pay attorneys' fees, there is nothing in the opinion to indicate that the claims at issue before the surrogate's court were claims of creditors of the attorneys. In Proffen, though the surrogate's court assumed jurisdiction to resolve claims that involved creditors of an attorney for the estate, the estate itself was one of those creditors. The estate had a judgment against the attorney and was seeking to set off the amount of its judgment against the amount of the other creditor's claim. Thus, in Proffen the relationship between the estate and the creditor was direct rather than remote, and the estate would be directly affected by resolution of the dispute.
 
 
 33
 We think it likely that the New York appellate courts would rule that the surrogate's court has no jurisdiction over the present dispute. Indeed, the surrogate's court itself, at the time of its order that Pikna's fee be placed in escrow, appeared to have some doubt as to its power to resolve the dispute between the government and Beers/Ahrensfeldt, stating that the matter of which of Pikna's creditors was entitled to this fund "can be resolved in this court if all of the parties agree. If not, it can be decided in any other forum." (Emphasis added.)
 
 
 34
 Because there is substantial doubt as to the surrogate's court's jurisdiction, and hence as to the adequacy of the litigation in that court as a vehicle for the complete and prompt resolution of the dispute between the parties, the district court's stay of the present action pending the resolution of the surrogate's court proceedings was an abuse of discretion.
 
 
 35
 We do not address the district court's denial of the government's motion for leave to amend the complaint. That order is not appealable, and in any event leave to amend was denied merely on the ground that amendment would be premature in light of the stay.
 
 CONCLUSION
 
 36
 The order of the district court staying the present action is reversed, and the matter is remanded for further proceedings.
 
 
 
 *
 Honorable Robert J. Ward, Judge of the United States District Court for the Southern District of New York, sitting by designation