Alice LAWRENCE, Suzanne Lawrence, Richard Lawrence, and Marta Jo Lawrence, individually, and on Behalf of the Estate of Sylvan Lawrence, including the Residuary Trust, Plaintiffs,

v.

Seymour COHN, Defendant.

No. 90 Civ. 2396 (CSH).

United States District Court, S.D. New York.

Nov. 14, 1991.

Graubard, Mollen, Horowitz, Pomeranz & Shapiro (Elaine M. Reich, of counsel), New York City, for plaintiffs.

Shea & Gould (Milton S. Gould, of counsel), New York City, for defendant.

Weil Gotshal & Manges, New York City, for defendant as Executor of the Estate of Sylvan Lawrence, Deceased.

## MEMORANDUM OPINION

HAIGHT, District Judge:

Plaintiffs are beneficiaries under the will of the late Sylvan Lawrence, who died in December, 1981. Defendant Seymour Cohn, Lawrence's brother, is sole executor of the Lawrence estate (the "Estate") and trustee of a residuary trust created by the will. The Lawrence will was admitted to probate by the Surrogate of New York County on January 29, 1982. On February 1, 1982, Letters Testamentary and Letters of Trusteeship were issued to defendant as sole executor and sole Trustee.

Plaintiffs accuse defendant Cohn of numerous acts of fraud and breaches of fiduciary duty. The parties have been engaged in litigation in the Surrogate's Court (Hon. Renee R. Roth) since 1983.

In 1990 plaintiffs filed the captioned action in this Court. They charge Cohn with violations of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5; and with violations

of the RICO statute, 18 U.S.C. §§ 1962(a)(b) and (c).

To these federal claims plaintiff append claims for common law fraud, breach of contract, and unjust enrichment. They pray for the imposition of a constructive trust on certain partnership interests acquired by defendant; a conveyance of those interests to plaintiffs and/or the Estate; an accounting; compensatory damages (trebled under RICO); punitive damages; and attorneys' fees and costs.

Subject matter jurisdiction in this Court depends on the viability of the § 10(b) and RICO claims.[1] Defendant moves to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, defendant asks that this Court abstain from exercising jurisdiction in deference to the Surrogate's Court, or stay proceedings here pending litigation there.

## BACKGROUND

These factual recitations derive from the amended complaint's allegations, accepted as true on defendant's motion to dismiss.

Prior to the death of Sylvan Lawrence, Lawrence and Cohn were the sole general partners of a limited partnership known as Ninety–Five Wall Street Company (the "Limited Partnership"). The Limited Partnership's principal asset was and remains an office building located 95 Wall Street. At the inception of the Limited Partnership, Lawrence and Cohn owned at 60% interest as general partners; Jack R. Aron owned an 11% interest as a limited partner; Marvin H. Schur owned a 4% interest as a limited partner; Edward D. Roberts owned a 1% interest as a limited partner; Schur and Bernard E. Brandes, as trustees for the benefit of Robert Aron, owned a 12% interest as limited partners; and Schur and Brandes, as trustees for the benefit of Peter Arthur Aron, owned a 12% interest as limited partners.

The Limited Partnership agreement provided in ¶ 9:

> If either Sylvan Lawrence or Seymour Cohn shall die, retire, or be adjudicated incompetent, the partnership shall not terminate and the other of them shall continue as the sole General Partner. The retired General Partner or the legal representatives of the deceased or incompetent General Partner shall be and become a Limited Partner and the share of such retired Partner or of such representatives in the profits, losses including depreciation, and the distributions shall be 30%. The interest of the remaining General Partner shall thereafter be 30%.

Under this provision, upon the death of Sylvan Lawrence his interest as a general partner in the Limited Partnership was automatically converted to a 30% limited partnership interest in favor of his Estate; and Cohn, individually, became the sole general partner with the exclusive right to manage and control the affairs of the Limited Partnership.

The Limited Partnership also provided in ¶ 8(b) as follows:

> In the event that any one or more of the Limited Partners (hereinafter called "Offering Limited Partner") shall receive and wish to accept a bona fide offer for the purchase of his interest in the partnership (hereinafter called the "Outside Offer"), the Limited Partner shall promptly notify the other Limited Partners thereof giving the name and address of the offeror ("Outside Offeror") and a copy of the Outside Offer containing all the terms and provisions thereof, and the other Limited Partners shall be privileged to purchase the interest of the Limited Partner on the same terms as the Outside Offer in the proportion that their respective interests bear to the aggregate interests of all of the Limited Partners other than the interest of the Offering Limited Partner.
>
> If the Limited Partners have not agreed to purchase the interest of the Offering

---

1. While the complaint also cites the diversity statute, 28 U.S.C. § 1332, and at oral argument counsel stopped just short of abandoning that additional source of subject matter jurisdiction, the complaint does not allege complete diversity. On the contrary: plaintiff Suzanne Lawrence and defendant are both alleged to be residents of Florida. ¶ 2, 5.

Limited Partner within 15 days after the Offering Limited Partner has advised them of the Outside Offer, then the rights of the Limited Partners or any of them to purchase the interest of the Offering Limited Partner shall cease and thereupon at the expiration of such 15 days, the Offering Limited Partner shall advise the General Partner of the Outside Offer, giving to the General Partner the name and address of the Outside Offeror and a copy of the Outside Offer containing all the terms and provisions thereof, and the General Partner shall have the right to purchase the interest of the Offering Limited Partner at the same price and terms as contained in the Outside Offer, provided the General Partner agrees so to do within 15 days after the giving of such notice to it.

On May 23, 1983, Cohn agreed with all of the then existing limited partners to purchase their limited partnership interests, exclusive of the 30% of the limited partnership interest Cohn held as legal representative of the Estate. As of that date, the following limited partners held a total 40% interest in the Limited Partnership: Robert Aron; Peter A. Aron; Marvin H. Schur; Edward R. Roberts; Jerome A. Manning, as trustee for the benefit of Tracy Elizabeth Aron, Michael Thomas Aron and Stephen Jack Aron; and Jacqueline A. Morrison and Jerome A. Manning as Trustees for the benefit of Sean Patrick Morrison. Cohn purchased those limited partnerships, totalling 40%, "as nominee for Seymour Cohn, as Executor of the Estate of Sylvan Lawrence, for Seymour Cohn individually, and for any combination thereof."

By order to show cause dated August 18, 1983, Cohn commenced a proceeding in the Surrogate's Court seeking the court's advice and direction (the "advice and direction proceeding") regarding who, as between him and the Estate, should own the 40% limited partnership interests acquired pursuant to the limited partners buy-out agreement entered into in May 1983. Cohn named the plaintiffs as respondents in the advice and direction proceeding.

On May 17, 1984, Cohn and the plaintiffs entered into a settlement taking the form of a purchase and sale agreement which provided for the final dispositions of the 40% limited partnership interests. Pursuant to that agreement, which the surrogate endorsed, the Estate obtained one-half of the 40% limited partnership interests acquired pursuant to the limited partners buy-out agreement, and Cohn acquired one-half individually.

Plaintiffs allege that prior to the May 1984 settlement purchase and sale agreement, Cohn fraudulently concealed from plaintiffs the true facts regarding the status of negotiations with lessees of space at 95 Wall Street, particularly Chemical Bank. The effect of those fraudulent omissions was to make the building appear less valuable than it was. Plaintiffs allege that had Cohn timely informed them of the true facts

> Plaintiffs would not have signed the Purchase and Sale Agreement—in which the Estate relinquished and conveyed to [Cohn] individually a portion of its right to purchase the entire 40 percent limited partnership interests acquired pursuant to the Limited Partners Buy–Out Agreement—and would instead have caused the Estate to purchase the entire amount of such interest. Complaint at ¶ 92.

Plaintiffs allege consequent injury to themselves and to the Estate, including the residuary trust created under that will.

Plaintiffs allege further wrongdoing on the part of Cohn, commencing soon after the death of Lawrence. They allege that starting in 1983, Cohn doubled and then further increased the salary he drew from Sylvan Lawrence Co., the leasing, management and brokerage arm of the "master partnership" between Lawrence and Cohn as co-equal partners which held the title to numerous real estate properties in and around New York City. Plaintiffs further allege that Cohn has maintained inflated and improper reserves in the Estate as a pretext for not distributing monies to its beneficiaries. Plaintiffs allege that Cohn has continued in the fraudulent concealment of the 95 Wall Street transactions.

They allege that he has wrongfully refused to wind up the affairs of the Estate, in furtherance of his plan to maintain control over its assets for the rest of his life.

It is fair to say that all these disputes have been the subject, over a number of years, of litigation in the Surrogate's Court.

Because defendant's motion to dismiss turns upon the viability of plaintiffs' federal claims, I consider them in order.

*The § 10(b) claim*

In his initial motion papers and at oral argument, defendant raised three issues concerning the legal sufficiency of plaintiffs' § 10(b) claim: whether the business interests involved constitute a "security" within the meaning of § 3(a)(10) of the 1934 Act; whether plaintiffs have standing to assert a § 10(b) claim; and whether the facts pleaded in the complaint demonstrate a "purchase or sale" of a security within § 10(b), assuming that a security is present at all.

Subsequent to the initial submissions and oral argument, counsel for the parties have dealt in a series of letter exchanges with *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which the Supreme Court decided on June 20, 1991. *Lampf* holds that § 10(b) and Rule 10b–5 claims are governed by a uniform federal limitations period which bars them unless suit is brought within one year after the discovery of the facts constituting the violation and within three years after the violations. The three-year limitation serves as a cutoff and hence is not subject to equitable tolling.

The parties at bar appear to agree that application of these periods of limitation would bar plaintiffs' § 10(b) claims. Plaintiffs faintly protest that "there is no pending motion to dismiss by the defendant based on statute of limitations grounds." Letter of counsel dated July 2, 1991 at 1. But defendant's counsel raised the issue in prior correspondence; if it be said that the formal motion papers do not assert the defense, I would permit an amendment. There is no need to generate further paper work. I will consider defendant's statute of limitations defense on the basis of the present record, supplemented by the most recent letter briefs.

In their submissions the parties debated the retroactive effect of *Lampf.* The Second Circuit, which in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990), anticipated *Lampf* by articulating a one-year/three-year uniform federal statute of limitations in § 10(b) cases, subsequently held in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1991) that the rule would not be applied retroactively on the facts of that case.

However, that issue is now foreclosed in favor of defendant at bar. The Supreme Court granted *certiorari* in *Welch*, vacated the Second Circuit's judgment, and remanded the case for further consideration in light of *Lampf* (which applied retroactively the limitations rule it announced) and *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (holding that in the civil context it is error not to apply retroactively to all cases pending on direct review a rule of federal law previously applied retroactively in the case announcing the rule.) On remand in *Welch* the Second Circuit, after analyzing *Lampf* and *Beam*, concluded "that the retroactive ruling in *Lampf* is to be applied retroactively to all cases not finally adjudicated on the date when *Lampf* was decided." 946 F.2d 185, 188 (2d Cir.1991). Since the case at bar falls within that category, plaintiffs' § 10(b) claims are time barred.

*The RICO Claim*

Plaintiffs' alternative source of federal subject matter jurisdiction is the civil RICO statute. The parties' voluminous briefs address the legal sufficiency of that claim. Defendant's 94–page main brief and 64–reply argue that plaintiffs have failed to allege racketeering acts on the part of defendant causing them direct injury; that the alleged predicate acts of mail and wire fraud do not satisfy Rule 9(b) pleading requirements; and that the requisite continuity for a RICO claim is not present.

Plaintiffs' 168–page brief-in opposition takes issue with those contentions.

But there is a threshold issue: that of abstention. Defendant stresses that the parties have been litigating these issues for years in the New York County Surrogate's Court; and that in *Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887, *reh'g denied,* —— U.S. ——, 110 S.Ct. 1942, 109 L.Ed.2d 305 (1990), the Supreme Court held that state courts have concurrent jurisdiction to adjudicate RICO claims. Defendant contends that even if plaintiffs state a viable RICO claim, this court should abstain and permit the claim to be adjudicated by the surrogate's court. Plaintiffs resist abstention. If abstention is appropriate, it would be inappropriate to reach the merits of the RICO claim. Accordingly I turn to the abstention issue.

*Tafflin* arose out of the failure of a Maryland savings and loan association and the attendant collapse of that state's non-profit corporation created to insure accounts in Maryland savings and loan associations that were not federally insured. Plaintiffs, nonresidents of Maryland holding unpaid certificates of deposits issued by the failed savings and loan association, commenced an action in federal court against individuals previously involved with both entities as well as a law firm, an accounting firm, and the state-created successor to the failed insurer. Plaintiffs alleged various state law causes of action as well as claims under the Securities Exchange Act of 1934 and RICO.

The district court dismissed the complaint. It held that plaintiffs had failed to state a claim under the Exchange Act. As for RICO, the district court concluded that state courts had concurrent jurisdiction over civil RICO claims, and that federal abstention was appropriate for the other causes of action because they had been raised pending litigation in state court. The Fourth Circuit affirmed, 865 F.2d 595 (4th Cir.1989), relying on the abstention point upon its prior decision in *Brandenburg v. Seidel,* 859 F.2d 1179 (4th Cir.1988), in which it concluded that "a RICO action could be instituted in a state court and that

Maryland's 'comprehensive scheme for the rehabilitation and liquidation of insolvent state-chartered savings and loan associations', 859 F.2d at 1191, provided a proper basis for the district court to abstain under the authority of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)." 865 F.2d at 600 (citations omitted).

The Supreme Court granted certiorari only on the RICO issue, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989), and affirmed the Fifth Circuit's conclusion that state courts have concurrent jurisdiction over civil RICO actions. The practical consequence was that the district court's abstention was also upheld. *Tafflin* therefore stands for the propositions that state courts are competent to adjudicate RICO claims; and that the assertion of a RICO claim in federal court does not mandate federal adjudication if a recognized basis for abstention exists.

The Second Circuit, citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976), has said:

> Roughly, the three categories of abstention are: (1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration; and (3) declining to restrain state criminal proceedings, collection of state taxes and the like.

> *Giardina v. Fontana,* 733 F.2d 1047, 1052 n. 1 (2d Cir.1984).

*Burford* abstention of the sort presented in *Tafflin* is an example of the second of these three categories. The first category is founded upon *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and the third upon *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In addition to these three traditional abstention categories, the Supreme Court in *Colorado River* identified an additional basis for abstention which has come to be known as the "exceptional circumstances"

doctrine. When there are concurrent federal and state court suits involving the same subject matter, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' ... may be appropriate ground for the federal court to abstain in exceptional circumstances." *Colorado River* at 817–18, 96 S.Ct. at 1246–47 (citing and quoting *Kerotest Mfg. Co. v. C.O. Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

*Colorado River* states generally that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *id.* at 813, 96 S.Ct. at 1244 and prefaced its discussion of the "exceptional circumstances" extension of the abstention doctrine by noting that "the pendency of an action in the state court is no ban to proceedings concerning the same matter in the federal court having jurisdiction," *citing and quoting McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910), and that the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given to them." *Colorado River* at 817, 96 S.Ct. at 1246.

Having expressed those generalities, the Court in *Colorado River* then discussed four specific factors which district courts should consider in determining whether exceptional circumstances exist which warrant abstention: (1) whether either court has assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. 424 U.S. at 818, 96 S.Ct. at 1246. *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 667, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978), added a fifth factor: whether federal or state law provides the substantive rule to determine the merits. The Supreme Court reaffirmed and further explicated those five factors in *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15–16, 23, 103 S.Ct. 927, 936–37, 941, 74 L.Ed.2d 765 (1983). *See generally Arkwright–Boston Manufacturers Mutual Insurance Co. v. City of New York*, 762 F.2d 205, 209–210 ("the Supreme Court found in *Colorado River* that certain exceptional circumstances will justify federal-court abstention even when the requirements for the three categories of abstention ... are not satisfied.")

In the case at bar, defendant relies upon *Younger* abstention, *Burford* abstention, and *Colorado River* "exceptional circumstances" abstention.

■ As for *Younger* abstention, the Supreme Court has made it plain that the applicability of the principles of federalism and comity that underline that case apply to civil as well as criminal proceedings. *See Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The first premise of the *Younger* decision was "the basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law." 401 U.S. at 43, 91 S.Ct. at 750. The second premise of *Younger* is that an important state interest be involved. But *Pennzoil* gives that element an expanded reading. "This Court repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." 481 U.S. at 12–13, 107 S.Ct. at 1526–27.

In *Ganoe v. Lummis*, 662 F.Supp. 718 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1116 (2d Cir.), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 886 *reh'g denied*, 487 U.S. 1250, 109 S.Ct. 13, 101 L.Ed.2d 964 (1988), Judge Ward cited *Younger* and *Pennzoil* in abstaining from adjudicating an action brought by alleged relatives of Howard Hughes seeking injunctive and monetary relief against the defendant, the fiduciary of the Hughes estate. In abstaining, Judge Ward said at 662 F.Supp. at 723:

In light of the significant state interest in efficiently administering the estates of its decedents in a single proceeding and in view of the opportunity to pursue federal challenges to those proceedings within the state courts, the principle of comity bids restraint here.

That analysis applies to the case at bar, given plaintiffs' opportunity, declared by the Supreme Court in *Tafflin*, to pursue

their federal RICO claim in the surrogate's court.

*Younger* abstention requires an effort by a plaintiff to restrain state court proceedings. That element is provided in the case at bar by plaintiffs' demand for the imposition of a constructive trust on the 20 percent limited partnership interests acquired by Cohn through the purchase and sale agreement, coupled with a demand for the conveyance of those interests to plaintiffs and/or the estate. Plaintiffs request that relief in Count II of the complaint, which is the RICO count. The imposition of a constructive trust, like an injunction, is an equitable remedy. *See In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989) ("a constructive trust ... 'confers on the true owner of the property an equitable interest in the proper superior to the trustee's'", *citing and quoting Quality Holstein Leasing*, 752 F.2d 1009, 1012 (5th Cir.1985)); *In re N.S. Garrott & Sons*, 772 F.2d 462, 467 (8th Cir.1985) ("a constructive trust is an equitable remedy imposed under circumstances where it would be unfair for the owner of the property to enjoy the beneficial interest and would result in his unjust enrichment.") The imposition of a constructive trust by this court in the case at bar would preempt the surrogate's court's effort to administer the Estate for which that court is responsible under state law. That is equally true of the constructive trusts for which plaintiffs pray on Counts III, IV, V and VI, those being the pendent state law claims.

Accordingly I conclude that *Younger* abstention is appropriate in this case.

■ Alternatively, *Burford* abstention is appropriate. In *Bassler v. Arrowood*, 500 F.2d 138 (8th Cir.1974), the executors of the estate of a Mrs. Bush brought a diversity action against the executors of the estate of Mr. Bush, the Bush Foundation and the Foundation's directors and former directors, two of whom were executors of the estate of Mr. Bush. The cause of action was basically for fraud in the distribution of the husband's estate and in the operation of the Bush Foundation. The district court abstained and the Eighth Circuit affirmed, stating at 500 F.2d at 142:

Federal courts choose not to exercise their jurisdiction for numerous reasons. See cases cited in Wright Federal Courts § 52 (1970). One of those instances is when the federal court action would needlessly interfere with the state's administration of its own affairs. *Alabama Public Service Commission v. Southern Railroad Company*, 341 U.S. 341, 349, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); *Burford v. Sun Oil Company*, supra; *Tomiyasu v. Golden*, 358 F.2d 651, 655 (CA9 1966). We believe that the instant case presents a situation fitting the mold for abstention.

The area of probate and decedents' estates presents many varied problems. State courts deal with these problems daily and have developed an expertise which should discourage federal court intervention. These local problems should be decided by state courts.

In the case at bar, plaintiffs append to their federal claims causes of action for common law fraud (Count III), breach of fiduciary duty (Count IV), breach of contract, including breach of an implied covenant of fair dealing (Count V), unjust enrichment (Count VI), and corporate waste (Count VII). All these claims are presently pending before the surrogate's court under *Tafflin*, the RICO claim may also be presented in that forum. To superimpose the jurisdiction of this Court upon the surrogate's court would "needlessly interfere with the state's administration of its own affairs" in an area where the surrogate's court has particular expertise. Accordingly abstention is appropriate under the *Burford* rule.

■ Assuming contrary to these conclusions that *Younger* and *Burford* abstention are not appropriate, clearly abstention under the exceptional circumstances rule of *Colorado River* is proper. The first, third, and fourth factors all militate in favor of abstention. The surrogate's court has assumed jurisdiction over the *res* represented by the Estate; consolidation of all litigation in one court will obviously avoid piecemeal litigation; and the surrogate's court first

obtained jurisdiction. The second factor, that of inconvenience of the federal forum, does not arise, since the two courthouses face each other across Pearl Street. As for the fifth factor, whether federal or state law provides the substantive rule to determine the merits, on balance it favors abstention as well. Concurrent jurisdiction exists over the RICO claims, and the pendent claims all turn upon the substantive law of New York. Given the *Tafflin* decision, it is also apparent that plaintiffs' federal rights derived from RICO will be protected in the state court proceeding, thereby satisfying a sixth *Colorado River* factor articulated in *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir.1989).

The circumstances of the case at bar readily fall within recent Second Circuit authority approving abstention under the exceptional circumstances rule of *Colorado River. See De Cisneros v. Younger*, 871 F.2d 305 (2d Cir.1989); *Cannady v. Valentin*, 768 F.2d 501 (2d Cir.1985); *Arkwright–Boston Manufacturers Mutual Insurance Co. v. City of New York, supra.*

For the foregoing reasons this Court abstains from exercising jurisdiction in this case.

The Clerk of the Court is directed to dismiss the complaint without prejudice.

It is SO ORDERED.